# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

WHITE RIVER SAV. BANK OF WHITE RIVER JUNCTION, VT., v. CITY OF SUPERIOR.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906.)

No. 1,196.

1. MUNICIPAL CORPORATIONS—POWER TO CONTRACT INDEBTEDNESS—VALIDITY OF BONDS.

A municipal corporation can incur no indebtedness for an object not within the powers, express or implied, granted by its charter, and a purchaser of its bonds is chargeable with notice of its charter powers and limitations when the purpose for which the bonds were issued is fully disclosed in their recitals.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1977.]

2. SAME—STREET IMPROVEMENT BONDS—GENERAL LIABILITY OF CITY.

The charter of the city of Superior, Wis., of 1889 (Laws Wis. 1889, pp. 407–413, c. 152, subsec. 16, §§ 139–167, et seq.), provides for the improvement of streets and generally that the cost in the first instance shall be borne by abutting property in proportion to benefits assessed, except at intersections of streets or alleys, and across public grounds, which shall be borne by the city at large. The city is authorized to pay for such improvements by the issuance of improvement bonds covering the assessments made on abutting lots, which shall contain recitals showing that they are chargeable to particular property specified, and required to extend a portion of the assessment each year on the tax rolls against such property and to credit the tax when collected to the fund against which payment of the bonds is charged. *Held*, that such charter did not vest in the city power to assume payment or obligation to pay in any event the expense of such improvements as a general liability, and that improvement bonds reciting that they were issued under such charter, and specifying the property assessable for their payment in accordance with a schedule of such assessments on file, are not enforceable, nor the purchase money recoverable, against the city as a general liability.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

148 F.—1

The plaintiff in error White River Savings Bank was the plaintiff below in a suit to recover of the city of Superior upon 22 bonds of $500 each, and interest coupons attached. The issues were submitted to the court, on waiver of a jury trial, and resulted in findings and judgment in favor of the city of Superior. Upon this writ of error the conclusions of law only are challenged.

The complaint alleges 24 causes of action—one for each of the bonds and attached coupons, respectively, and two for money had and received in the consideration paid by the original purchasers of the bonds, under assignments to the plaintiff.

The answer avers: (1) That the city was indebted beyond the constitutional limit and the bonds were invalid as general obligations; (2) that they were issued under the charter provisions for improvement of the streets and not as general obligations; (3) that no provision was made to pay principal or interest by general taxation and the bonds were invalid as general obligations; and (4) facts by way of defense to the alleged causes for money had and received.

The bonds in suit were alike in form, except as to number and description of street improvement mentioned in each, and the following exhibit illustrates the form of all:

"No. 1176                       State of Wisconsin.                        $500.00

"City of Superior.

"Street Improvement Bond.

"County of Douglas.

"Know all men by these presents, that the city of Superior, in the county of Douglas, state of Wisconsin, for value received hereby acknowledges itself indebted to and promises to pay the bearer hereof the sum of five hundred dollars lawful money of the United States of America, to be paid on the second day of January, A. D. 1898, redeemable at the pleasure of the said city of Superior after the second day of January, A. D. 1896, with interest thereon at the rate of six per centum per annum, payable semi-annually on the second days of July and January in each year as evidenced by the semi-annual coupons hereto attached as they severally become due, both the interest and principal of this bond being payable at the National Bank of the Republic in the city and state of New York.

"This bond is issued by authority of chapter 16 of the charter of the city of Superior, approved March 23d, A. D. 1889, and by a resolution duly passed, approved and published in said city of Superior and state of Wisconsin, bearing date the 29th day of May, A. D. 1891. This bond is one of five bonds numbered from 1175 to 1179 inclusive, the aggregate amount of which is two thousand three hundred and fifteen and $83/100$ dollars and is issued for the purpose of defraying the cost of constructing the improvement on Dock street between North First street and a point 600 feet north of north line of North First street and on account of such assessment made upon the property abutting upon said street between said points for such improvement as the owners have not elected to pay.

"The payment of the principal and interest of this bond is made chargeable upon the property abutting upon said street between said points as evidenced by a statement and schedule of such special assessments on which the bonds are issued as recorded in the office of the city clerk of said city of Superior.

"And it is hereby certified and recited that all acts, conditions and things required to be done, precedent to and in the issuing of this bond, have duly happened and been performed in regular and due form as required by law.

"The full faith and credit of the city of Superior, Douglas county and state of Wisconsin, is hereby irrevocably pledged for the prompt payment of this bond, both principal and interest.

"In testimony whereof, the said city of Superior, county of Douglas and state of Wisconsin has caused this bond to be signed by its mayor and city clerk and the seal of said city to be attached this second day of January, A. D. 1891.

"——————, Mayor.

"W. J. Dargis, City Clerk.

"Countersigned: ——————, Comptroller."

The following agreement extending the time of payment was made July 2, 1898, and accepted by the city:

"For and in consideration of one dollar to me in hand paid by the city of Superior and other valuable consideration the undersigned owner and holder of this bond hereby agrees to and does extend the time of payment thereof until the first day of July, 1908, and agrees to forbear suit thereon until said date and further agrees to and does hereby reduce the rate of interest on said bond after the first day of July, 1898, to the rate of 5% per annum, payable semi-annually as evidenced by coupons attached to this bond provided that said city shall have the option of paying the said bond with accrued interest of any time prior to July 1st, 1908, and provided further that in case of failure or neglect of the city to pay any installment of interest for a period of six months after the same becomes due the bond shall become due at the option of the holder.

"White River Savings Bank,
"By William G. Watts, its Attorney in Fact."

The charter of the city under which these bonds were issued, is chapter 152, p. 349, Laws of Wisconsin for 1889, and subchapter 16 thereof (page 407), mentioned in the bonds, is entitled "City Improvements" and embraces sections numbered consecutively from 139 to 167 inclusive. The following references are deemed sufficient for the sections applicable to the controversy. Sections 139, 140, 141, and 142 authorize and provide for establishing grades of streets, regulation of sidewalks, with general provision as to opening and paving streets. Sections 143, 144, and 145 read as follows:

"Section 143. In the first instance the grading, graveling, paving, planking, macadamizing or improvement of any street or alley, and the construction of cross walks where there is no intersection of streets, shall be chargeable to the lots or parcels of land fronting or abutting upon such street or alley, in proportion to the benefits accruing to such lots or parcels of real estate by reason of such improvement. Provided, however, that the total amount so assessed to the abutting real estate as benefits shall not exceed the entire cost of such improvement. And provided, further, that in no case shall the amount so assessed to any parcel of abutting real estate exceed the benefit accruing to such real estate by such improvement except in case of sidewalks.

"Section 144. The expense of all crosswalks at the intersection of streets or alleys, and across public grounds shall be paid by the city at large. The expense of maintenance, relaying, keeping in repair and cleaning of streets, in all cases where the streets shall have been constructed to the established grade and graveled, planked, macadamized or paved as required by the common council, shall be paid out of the general fund of the city.

"Section 145. Before the council shall change or alter any established grade, or shall order any work to be done on any street, in whole or in part, at the expense of the abutting real estate, it shall order the board of public works to view the premises and determine the damages and benefits which will accrue to each parcel of abutting real estate, by such change or alteration of grade; the entire cost of the contemplated work or improvement upon the street the benefits and damages that will accrue to the several parcels of abutting real estate by such work or improvement, and the amount that should be assessed under the provisions of this charter, to each parcel of such abutting real estate, as benefits accruing thereto by such contemplated work or improvement."

The succeeding sections, up to 157, direct the course to be pursued in the letting and performance of the work and the making of assessments. Section 157 reads: "When a contract is let for doing any work specified, herein chargeable to the abutting real estate, it may provide that the amounts so chargeable may be paid with certificates against the lots or in improvement bonds, or that payment may be partly made in certificates and part in cash or improvement bonds, or both."

Section 158 prescribes the notice to be given for letting a contract when the amount chargeable to the abutting lots is finally determined, which notice states, "It is proposed to issue bonds chargeable to the abutting real estate to pay the special assessments and such bonds will be issued covering all of said

assessments except in cases where the owners of the property have elected to pay on presentation of the certificates."

Section 159 reads: "After the expiration of said thirty days the council may issue improvement bonds covering all the assessments except such as the owners have filed notices of election to pay as stated in the preceding section. Said bond shall be signed by the mayor and clerk, be sealed with the corporate seal of the city and contain such recitals as may be necessary to show that they are chargeable to particular property, specifying the same and the number and amount of said bonds."

Section 160 directs that the bonds be "semi-annual interest coupon bonds, payable at the option of the city after five years and absolutely at the expiration of seven years of their date, and shall draw interest at a rate not exceeding six per cent per annum."

Section 161 requires the city clerk to prepare and record "a statement of the special assessments on which the bonds are issued"; and section 162 provides, "The treasurer shall pay the interest on, and principal of said bonds as the same become due and charge the amount to the proper fund."

Section 163 reads: "In each year after the issuing of said bonds, when the tax roll for the year is prepared, one-fifth of the special assessment on each parcel of property covered by said bonds with six per cent interest on the amount of said special assessment then unpaid, shall be extended on the tax roll as a special tax on said property, and thereafter this tax shall be treated in all respects as any other city taxes, and when collected, the same shall be credited to the fund against which payments on said bonds are charged."

Section 164 prohibits actions to avoid any such special assessment after bonds have been issued covering the same and that the bonds shall be conclusive proof of all the proceedings.

General provisions of the charter, in so far as they appear material, are mentioned in the opinion.

E. F. McCausland, for plaintiff in error.

L. K. Luse, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge, after the foregoing statement, delivered the opinion of the court.

The issuance of the bonds in suit and their sale by the city of Superior in November and December 1891, at 94 per cent. of the face and accrued interest, are conceded facts; and the findings are that the plaintiff in error purchased them from the holder, at par, more than four years after they were issued, while the city had promptly paid the interest meantime. Each bond bears the designation "Street Improvement Bond," and recites that it is issued by authority of chapter 16 of the city charter of 1889 (chapter 152, p. 407, Laws 1889), for street improvements upon portions of a certain street described in the bond, and "is made chargeable upon the property abutting" thereon, "as evidenced by a statement and schedule of such special assessment on which the bonds are issued, as recorded." Recovery is sought against the city, as a general obligation assumed by it, in thus issuing and selling the bonds, and not dependent upon the collection of the special assessments referred to. The primary test of liability, therefore, irrespective of the recitals, is, whether the charter provisions vest power in the city to incur such general obligation in any event. That power to borrow money "does not belong to a municipal corporation

as an incident of its creation," and "must be conferred by legislation, either express or implied," is stated by Mr. Justice Bradley, in the prevailing opinion in The Mayor v. Ray, 19 Wall. 468, 475, 22 L. Ed. 164, as the general doctrine. See 1 Dillon's Municipal Corp. (4th Ed.) §§ 122, 125. The only dissent from this expression of the rule—and as well the diversity of opinion in the general authorities—arises out of the strict limitation it may impose in reference to an implied power. It is well settled, however, that the municipality can incur no indebtedness for an object not within the powers, express or implied, granted by its charter, and that the purchaser of a bond is chargeable with notice of the charter powers, when the purpose is fully disclosed in the bond recitals. If the city of Superior was not empowered to assume and pay for the improvements described in the bond, or incur indebtedness for such expenditure, as a general municipal charge, it is plain that such liability cannot be imposed in this action. The purpose and material facts are recited in the bonds and none of these recitals tend to the view of general liability—aside from the formal promises of the city and pledge of its "faith and credit"—while the purchaser is bound by the law and facts thus brought to his attention.

The meaning and policy of sections 143 and 144 are unmistakably this: That the expense for the original or "first instance" of permanent improvement of a street or alley, to the extent of its frontage on abutting lots shall be borne exclusively by and made chargeable to such abutting lots, in proportion to benefits assessed under other provisions; and that the remaining expense of such improvement, at the intersections of streets and alleys and across public grounds, shall be borne by the city at large. The succeeding sections, from 145 to 156 inclusive, provide for the assessment against abutting lots, the letting of the work and the giving of certificates to the contractor of amounts chargeable to lots. Section 157 authorizes the contract for the work "chargeable to the abutting real estate" to provide "that the amounts so chargeable may be paid with certificates against the lots or in improvement bonds, or that payment may be partly made in certificates and part in cash or improvement bonds, or both." Section 158 prescribes the notice to be given when improvement bonds are intended, stating the purpose "to issue bonds chargeable to the abutting real estate, to pay the special assessments," except where owners elect to pay. Section 159 provides for issuing the bonds to "contain such recitals as may be necessary· to show that they are chargeable to particular property, specifying the same." They are to be made "payable at the option of the city after five years and absolutely at the expiration of seven years," and bear interest, not exceeding 6 per cent. (section 160); the city clerk is to record a statement of the assessments with a copy of the bonds (section 161); the treasurer is to pay accruing interest and principal "and charge the amount to the proper fund" (section 162); one-fifth of the special assessment, with 6 per cent. interest, "shall be extended on the tax roll as a special tax on" the lots so asssessed, "and thereafter this tax shall be treated in all respects as any other city taxes," and when col-

lected "credited to the fund against which payments on said bonds are charged" (section 163); and no action to avoid the assessments shall be maintained after the bonds are issued (section 164).

No departure from the above-mentioned purpose of sections 143 and 144 is stated in terms in either of these provisions, nor is any express provision or authority found elsewhere in the charter which makes the bonds general obligations. But the contention is in substance, that such intent must be inferred from the provisions for issuing improvement bonds; that in such event, the city elects to thus raise the means to pay for the improvement; and that it is "then reimbursed out of the assessments when collected." If this view were otherwise tenable, it is, as we believe, inconsistent with the general provisions of the charter, particularly section 103, that: "The common council shall have authority to issue bonds for the following specific purposes only"—and then specifies objects, none of which are applicable to special assessments. In other sections: funds from special assessments are excepted from control of the common council (section 92); money cannot be appropriated for purposes not expressly authorized (section 93); and orders cannot be drawn upon the treasurer unless money is in his hands to the credit of the fund (section 95).

The question, however, whether this issue of improvement bonds became a general obligation against the city, under the provisions of the charter of 1889, was recently (1902) before the Supreme Court of Wisconsin, in Uncas National Bank v. Superior, 115 Wis. 340, 344, 91 N. W. 1004, and it was decided, in a well considered and unanimous opinion, that the city was without power to incur general liability for the purpose, and that the bonds were not enforceable otherwise than through the special assessment provisions of the charter. While the interpretation referred to occurred long after the issue and sale of these bonds, so that we may not rest upon it as conclusive of rights acquired by the plaintiff in error, we concur in such interpretation, recognizing, not only its importance and weight as the rule of that court, but satisfied of its correctness, upon independent consideration of the statute.

The contention upon behalf of the plaintiff in error that a prior decision of the same court (1893) in Fowler v. City of Superior, 85 Wis. 411, 415, 54 N. W. 800, is controlling in respect of the rights involved in this suit, or at least strongly persuasive, against the construction adopted in the Uncas National Bank Case, is without force, for the reason that it arose under and involves only the provisions of a subsequent charter of 1891 (chapter 124, p. 774, Laws 1891), which differed in material terms from the charter of 1889. Were the provisions involved in the Fowler controversy substantially identical with those involved here, the determination would not be free from difficulty, in view of the facts found in reference to the negotiation of the bonds in suit. In this court, prior to the decision in the Uncas National Bank Case, the question of liability arose, in King v. City of Superior, 54 C. C. A. 499, 501, 117 Fed. 113, upon bonds in like form, issued under the charter of 1891, and it was then rightly treated as set at rest by the decision in the Fowler Case; but the rule fol-

lowed there is not applicable to bonds issued under the charter of 1889. In Uncas National Bank v. Superior, 115 Wis., the opinion (page 349, 91 N. W. 1007) points out important distinctions between the charters of 1889 and 1891, and construes the charter of 1889 as conferring no power to incur general obligation for payment of the bonds, "notwithstanding what was said in the Fowler case." Other distinctions appear, not mentioned in that opinion, namely, section 132 of the charter of 1891, authorizes such other recitals in the bonds "as the common council may think proper to insert," not provided in the prior charter. Section 133, referring to the issue of improvement bonds, expressly authorizes sale of the bonds in installments, by the common council "at not less than par value" and collection of the proceeds to be "paid to the contractor," while no such provision appears in 1889, nor any mention of sale of the bonds. Section 130 provides that the work may be paid in certificates, bonds or the "proceeds of the sale of such bonds," while use of the proceeds is not mentioned in the charter of 1889.

We are of opinion, therefore, that the construction of the statute under which the bonds in suit were issued, is unaffected by the Fowler Case; that no power is vested in the municipality to assume payment or obligation to pay, in any event, the expense of the improvements in question as a general liability; that the bonds are not enforceable, nor the purchase money recoverable, against the city upon any theory of the present action; and that the court below rightly dismissed the complaint on the merits.

The judgment accordingly is affirmed.