HAYDEN et al. v. DOUGLAS COUNTY, WISCONSIN.

(Circuit Court of Appeals, Seventh Circuit.  January 5, 1909.)

No. 1,522.

MUNICIPAL CORPORATIONS (§ 955*) — IMPROVEMENT BONDS—RIGHTS OF BOND-HOLDER IN SPECIAL TAXES—SUIT AGAINST COUNTY AS COLLECTOR.

St. Wis. 1898, § 1114, provides that delinquent taxes returned by a city to the county uncollected "shall belong to the county" when the county levy is equal to or exceeds the amount of the delinquent taxes so returned, and that they shall be credited to the city when so returned.· The charter of the city of Superior (Laws Wis. 1889, p. 349, c. 152) authorizes the city to issue improvement bonds for street improvements, to be secured by and paid from special assessments levied in installments on abutting property. Held, that such special assessments belong to the owners of the bonds until finally collected and paid over, and that when included in the delinquent taxes returned to the county treasurer pursuant to other charter provisions they do not come within the provision of St. § 1114, and that while the county assumes no liability on account of the same it is accountable to the city for the amount collected, and where its books are so kept that they do not show what if any collections on such delinquent special assessments have been returned to the city treasurer the county may be joined with the city as a defendant in a suit in equity by a bond-holder and required to make an accounting.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 955.*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

The appellants filed their bill in the Circuit Court, as complainants, against the city of Superior and the county of Douglas, joined as defendants, for an accounting and equitable relief in respect of taxes alleged to be collected and. received by the city and county respectively, as described in the bill, which were assessed to be paid and are payable upon so-called "improvement bonds" issued by the city and owned by the· appellants. Separate demurrer was filed by the appellee, county of·Douglas, averring want of equity, and was sustained by the trial court. This appeal is from a decree thereupon dismissing the bill as to such county.

The improvement bonds in controversy are of like character with those involved in a prior case reviewed by this court, reported as Jewell v. City of Superior, 135 Fed. 19, 67 C. C. A. 623; and like bonds were also involved in a prior bill against both city and county, in the trial court, reported as Olmsted v. City of Superior·(C. C.) 155 Fed. 172.

The facts averred in the bill are fairly and sufficiently summarized in the brief for the appellants, as follows:

"The complainants were and are the owners of $10,000 of special assessment bonds issued by the city of Superior in anticipation of the collection of special assessments levied upon abutting property for the improvement of Tower avenue, a street in the city of Superior, and in the county of Douglas, Wis.  The bonds belonging to Hayden, Miller & Co. constitute 23.56% of the total bonds issued in anticipation of the collection of the particular assessments referred to.  The bonds referred to were issued under the charter of the city of Superior for 1889 (being chapter 152, p. 349, of the Laws of the state of Wisconsin for that year).  In brief these laws, in connection with the general municipal and county tax laws of the state of Wisconsin, provide for the collection by the city treasurer of special assessments as they fall due from time to time, and further provide that each year unpaid special assessments, as well as all other defaulted taxes (general and special) within the city limits, shall be turned over by the city treasurer to the county treas-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

urer (in this case the treasurer of Douglas county, Wis., appellee herein), and that he shall before their collection on the county's books give the city credit therefor. The bill further alleges that the bonds referred to, having gone to default, the time of payment of the same was by consent extended under the authority of an act of the Legislature passed in April, 1897 (Laws 1897, p. 304, c. 184), and the bonds in question, in evidence of such extension, were stamped with suitable language. * * * It is further alleged that the city of Superior had up to January 1, 1908, collected assessments for the Tower avenue improvement amounting to $37,210.74, a total formed by adding the principal sum of $30,432.24 to interest upon the same at 4 per cent. to July 25, 1895, and at 1 per cent. to July 1, 1902. Of this amount 23.56% should, it is alleged, in equity, be applied to the payment of complainants' bonds, which formed 23.56% of the total issue. Under the extension act of 1897, $3,586.37 of unpaid assessments were extended as collected by the city of Superior, but were not paid over to the holders of the Tower avenue bonds. Six per cent. added to these extended payments makes a total of $5,620.60, of which 23.56% is $1,324.21, the amount properly applicable in equity towards the payment of complainants' bonds. Many delinquent Tower avenue assessments were, during the years succeeding the issue of the bonds, turned over by the city to Douglas county, Wis., for collection, and the county did in fact collect on account of delinquent Tower avenue assessments an amount which, with interest, makes a total of $17,181.77, 23.56% of which equals $4,048.02; which amount should be applied to the payment of complainants' bonds.

"It is alleged that the county of Douglas has received credit from the city of Superior for such amount of $4,048.02, but that the manner in which it did so receive such credit is as follows: i. e., that during the time referred to there were many other special assessments being collected by the city and county on city property for the Tower avenue improvement. There were also many delinquent general taxes collected. The practice was that, in settlements between the city treasurer and the county treasurer, the city treasurer retained for the city the cash payments on account of taxes and assessments, returning to the county the delinquent roll and county orders received in payment of taxes. The county then collected and set aside the amount of taxes each year out of moneys first received from the redemption and sale of certificates, regardless of whether the money first paid in represented general or special taxes. In the years 1891 to 1901 the delinquent rolls returned by the city treasurer to the county treasurer amounted to $3,266,189.85. The rolls included both special assessments and general taxes, not separated, but turned in as one lump sum. In the years referred to the county treasurer paid to the city treasurer $1,710,292.31, which amount included all money paid by the county treasurer during that period. No separate account was kept of the assessments or of the general taxes, except as to the $3,586.37 of special assessments extended as hereinbefore set forth, and no attempt was made to keep assessments separate from the general taxes. The city was charged in the fall of the year with state and county taxes, and credited in the spring with the delinquent roll. If the delinquent roll largely exceeded the amount of the county taxes, no attention was paid to what the balance consisted of or of the nature of the tax. The books contained in the offices of the county of Douglas do not show whether any portion of the assessments collected on account of the improvements in question have actually been paid to the city treasurer. The only account kept was with the delinquent tax represented by the aggregate of all the taxes and assessments. Complainants have demanded payment of 23.56% of the amount of the Tower avenue assessments collected by said city and county respectively, and both city and county have refused to pay. The prayer of the bill is that an accounting may be had, that the court may determine whether or not the county of Douglas has in fact paid over to the city of Superior the money collected by the county of Douglas on delinquent Tower avenue assessments; that, if the court shall find that the county has not so paid the assessments to the city of Superior, it be ordered so to do, and that then the city of Superior be ordered, out of the assessments collected by the city itself and out of those paid over to it by the county of Douglas, to pay to complainants 23.56% thereof."

H. B. McGraw, for appellants.
William R. Foley, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The decree appealed from dismisses the appellants' bill, as against the county of Douglas, on demurrer for want of equity, and no issue arises upon the equities stated for relief against the city of Superior. Equitable relief in any form is denied as to the appellee county, and the single question on this appeal is whether facts are averred which authorize joinder of the county, for the relief sought, by way of accounting or otherwise.

Rights of the appellants, as holders of improvement bonds issued by the city of Superior under the provisions of its charters, are clearly stated in the bill, together with defaults in payment for which remedy in some form is needful. Complications of fact in respect of the special assessments required by the charter to be levied from year to year upon the lots embraced in the improvement, to be collected and paid upon such bonds in annual installments, are also stated, not remediable at law, and without equitable relief no adequate remedy appears for enforcement of the municipal obligations so incurred. Whether default in payment of the bonds has been due to confusion in the statutory provisions, either of the charter or general statute, or to neglect or mistake on the part of one or the other municipality in their administration, are questions raised by the bill, and equitable jurisdiction may well be invoked for their solution. The difficulties which have been encountered by the holders of improvement bonds of the issue and class described in the bill, in efforts for their collection, are distinctly averred in the bill; and that, for one or another of these causes, much litigation on their behalf has resulted either in defeat or insufficient recovery, is exemplified in prior cases brought to our attention on this hearing, including several reviewed by this court, viz.: King v. City of Superior, 54 C. C. A. 499, 117 Fed. 113; Jewell v. City of Superior, 67 C. C. A. 623, 135 Fed. 19; White River Sav. Bank v. City of Superior, and other cases heard therewith, 148 Fed. 1, 10, 78 C. C. A. 169.

The improvement bonds described in this bill were issued under the provisions of chapter 16 of the charter of 1889 for the city of Superior (chapter 152, p. 349, Laws Wis. 1889), which are summarized with the opinion of this court in White River Sav. Bank v. City of Superior, supra. In reference to those provisions, we deem it sufficient to remark that they plainly intend and require (section 161) that the bonds so issued for street improvement shall be secured by special assessments, made by the city upon lots named, for their payment; (section 163) that one-fifth of the amount assessed (with interest) is to "be extended on the tax roll as a special tax on said property," and "when collected the same shall be credited to the fund against which payments on said bonds are charged," and thus to continue annually until paid up; and (section 162) that payments upon the bonds therefrom are to be made by the city treasurer. The intention, therefore, is unmistakable, as stated in the opinion of Judge Jenkins, speaking for this

court, in Jewell v. City of Superior, supra, that "these special assessments are private property and belong to the owners of the bonds, not to the municipality," with the city made "trustee for collection."

Were the special assessments all collected by the city upon the tax roll, none of the complications mentioned in the bill could arise, and the way would be clear to enforce payment. But it is averred that they were mainly, if not wholly, uncollected under the tax roll, and were thus returned to the county treasurer as delinquent taxes, pursuant to section 1114, St. 1898—a course directed by section 119 of the charter, in reference generally to "delinquent taxes." With no express provision for the city to enforce these assessments directly, this general statutory means or agency was necessarily adopted, as all authority and machinery for the ultimate enforcement of delinquent taxes of cities and towns is vested in the county, under the general plan. Taxes levied for state and county purposes are apportioned to cities and towns and payable by each to the county; and section 1114 provides that the amount of the delinquent taxes returned shall be "credited" to each respectively by the county treasurer thereupon; that the credit so given shall apply upon such apportionment payable to the county, and that the "excess, when collected (with the interest and charges thereon) shall be returned to the town, city or village treasurer for the use of the town, city or village."

The bill avers, in substance, that returns of delinquent taxes which included these special assessments were so made by the city and credited to it by the county; that large amounts (specified) have been received by the city thereupon, for such assessments, which have not been paid upon the bonds; that the county has in fact collected other large amounts (specified) on account of such assessments which have not been applied in payment thereof; that no separation was made and no separate account kept by the county between the special assessments and general taxes, but all appear "as one lump sum"; that, in reference to the excess of delinquent taxes returned over the amount payable to the county, "no attention was paid to what the balance consisted of or of the nature of the tax"; and that "there is nothing to show from the books" of the county "whether any portion of the assessments collected on account of the improvements in question have actually been paid to the city treasurer, or whether the moneys have been used for other purposes." Notwithstanding the confusion and difficulty thus averred, and the property right of the appellants (as above mentioned) to their pro rata share of all sums collected upon the special assessments, the decree refuses equitable cognizance for any form of accountability on the part of the county; and the contentions against joinder of the county, for such complete relief as equity may thus afford, are in substance: (1) That no liability to the bondholders for these assessments is placed by either statute upon the county, nor is such liability incurred by it, when collections are made, for the reason that section 1114 prescribes: "All taxes so returned as delinquent shall belong to the county;" and (2) that no fact is averred in the bill of fraud, neglect, or violation of law on the part of the county to make it chargeable for any form of equitable relief. It may well be conceded

that these propositions, if tenable, would not only defeat recovery at law against the county, but prevent its joinder in any proceeding at law to that end. Whether either or all of them, united as objections to this bill in equity, can prevent such joinder for the relief sought, is quite another question; and each is considered in reference to its bearing on that inquiry.

Under the charter of the city two kinds of obligation are provided for payment of contracts for street improvements—both resting on like special assessments against lots embraced therein, which are separately levied and entered upon the tax roll for such purpose, made liens upon such lots and directly payable by the city treasurer (primarily) to the holder out of collections therefor coming to his hands— the one form issued as an "improvement certificate," charged against individual lots (section 155) and payable from a present assessment, and the other as an "improvement bond," made a charge upon all lots embraced in the improvement (section 159) and payable out of successive partial assessments against each lot so included. The only substantial distinction between them in the method of payment appears in section 156 of the charter, which provides, in reference to the certificates, "that all moneys collected by the city treasurer and all moneys collected by the county treasurer or county clerk, on account of such taxes, shall be delivered or paid to the owner of the same, on demand, upon surrender of such certificate"; while the city treasurer alone is named in section 162, directing payment of installments of interest and principal due upon the improvement bonds.

In State ex rel. Donnelly v. Hobe, 106 Wis. 411, 413, 82 N. W. 336, the Supreme Court of the state construed these provisions for special assessments—as renewed in the revised city charter of 1891 (Laws 1891, p. 774, c. 124)—in an instructive opinion, resulting in the issuance of a peremptory writ of mandamus against the county treasurer to pay over special assessments collected by him as delinquent taxes to the holder of improvement certificates issued therefor. The rule of direct liability thus applied, however, is referable to the above-mentioned provision for such certificates (section 156 of the charter, which appears in the charter of 1891 as section 129), and not applicable, in the light of such reference, to authorize like rule of liability in favor of the present bondholder. Nor is the decision of this court in Jewell v. City of Superior, supra, in any sense, authority for recovery by the bondholder, in direct suit against the county, for assessments collected by its treasurer or clerk, as no such issue was there involved; and the excerpt from the opinion in that case, quoted by counsel for the appellants as thus operative, appears in a mere arguendo reference to the assumed general rule of the Hobe Case—with the above-mentioned distinction between certificates and bonds in the method of payment, after assessments were returned as delinquent, neither called to attention nor involved in the Jewell decision—and is plainly inapplicable to charge the county with direct liability.

The averments of this bill appear to be framed for relief upon one or the other of these theories for which the appellants contend: (1) That the city of Superior is liable for the entire amount of assessments

returned as delinquent, credited by the county thereupon, if no liability is incurred by the county for such assessments, when collected in any form; (2) that, treating the county as the statutory agency for collection of the delinquent assessments, with the credit to the city a mere "matter of bookkeeping"—as held in the Jewell Case, supra—the county becomes directly liable to the bondholder for payment to him on collection; and, if both of these propositions of direct liability are overruled, (3) that the county is accountable to the city for all such collections, to be paid over to it for the benefit of the lienholders, so that the appellants are entitled to equitable relief against the county as well under the circumstances averred. We are of opinion that the first-mentioned contention was rightly overruled in the Jewell Case, supra, and is untenable, as well, under the present averments; and that no sanction appears under either statute for requiring the county to pay the amounts collected upon assessments directly to the bondholder. The remaining proposition, however, that the county may be required to account for such collections and pay them over to make up the trust fund provided by the charter for that purpose, rests upon equities which entitle the bondholders to such relief, unless the terms of the general statute (section 1114), providing that taxes "returned as delinquent shall belong to the county," must be construed to be destructive of his charter lien upon the assessments, as the appellee county (in effect) contends. The test of equitable cognizance, therefore, hinges on the meaning of this general provision, read in the light of the special charter provisions applicable as well to the delinquent returns.

That the special assessments in question are levied and pledged by the charter in favor of the lienholders, as private property belonging to such holders, "not to the municipality," and were not within the above-mentioned provision for taxes returned as delinquent to belong to the county, was expressly held by this court in the Jewell Case, supra; and we believe such ruling to be in conformity with the construction of these charter provisions and general statute adopted by the state Supreme Court in the Hobe Case, supra. While it is true (as before stated) that the rights there involved were those of a certificate holder, the various charter provisions for making the assessments and conferring ownership of the lien were the same under which (in the alternative form) these bonds were issued, and their interpretation became needful to ascertain the property rights of either lienholder in the assessments. The opinion is exhaustive and well considered, distinguishing such assessments from the taxes mentioned in section 1114 as owned by the county when returned delinquent, and establishes the rule, as we believe, for like distinction in the case at bar. As there stated:

"A general provision, covering a subject as a whole, must be deemed to have been intended as subordinate to a particular provision relating to a particular element included in such subject. Again, when there is a particular clause of an act, or a special act, and a general clause or act the language of which may be reasonably, though not necessarily, construed to include the subject of the particular clause or act, the presumption is that the latter was intended as an exception. Mason v. Ashland, 98 Wis. 540, 74 N.

W. 357." Also, "Harmony, not confusion, is to be sought for by statutory construction."

The earlier case, however, of Sheboygan County v. City of Sheboygan, 54 Wis. 415, 11 N. W. 598, is relied upon as controlling authority for the broad and independent construction of the general provision for which the appellee contends. We do not understand that case to be applicable, under the issue there involved for decision, irrespective of the question as to its weight with the Hobe Case standing as a direct and final interpretation. In Sheboygan v. Sheboygan, the county sued the city to recover the amount of "a special assessment for grading" which was returned delinquent by the city under section 1114, St. 1898, stating these facts alone for its complaint: That such assessment was so returned to the county treasurer with the delinquent list and "credited to the" city; was then "charged back" by order of the county board, and the city refused payment. General demurrer to this complaint was sustained below, and the only question for review was whether a cause of action was stated. The opinion states that "it is not alleged or claimed that the special assessment or tax was not legally levied, or that it is not a valid charge against the lots"; and that "the action is based solely upon the proposition that in his settlement with the city treasurer the county treasurer should not have allowed the amount of the grading tax or assessment, and therefore that the county had a valid claim" for such improper credit. Thus no other question arose, and the solution was plain, as there decided— under a charter provision that "delinquent special assessments in that city come under the general statute"—that such return was rightly made and credited, as within the purpose of section 1114. Other comments in the opinion upon the terms of section 1114 are without force, as we believe, under the present issue.

We are of opinion, therefore, that the interest of the appellants, as bondholders, under the averments of the bill, in the special assessments referred to, is that of ownership in the liens created pursuant to the charter provisions; that it continues unimpaired throughout all proceedings for return of delinquent taxes to the county treasurer, inclusive of the credit thereupon to the city treasurer, and for enforcement and collection of delinquent taxes on the part of the county; that when collected by county treasurer or clerk such special assessments are to be paid over to the city treasurer to be applied as directed by the charter; and that the averments authorize joinder of the county as a party for equitable relief to that end. The objections urged that no fraudulent conduct or violation of law appears on the part of the county, and that the appellants cannot have a recovery against the county for any collections made, are without force for denial of such joinder and relief in equity, however insuperable under the rigid rules of procedure at law. The doctrines of equity, with respect to parties and relief, differ from those at common law "in their fundamental conceptions, in their practical operation, in their adaptability to circumstances, and in their results upon the rights and duties of litigants"; and thus the rights and liabilities of all parties interested in the subject-matter are properly within the scope of equitable adjust-

ment and adjudication between all interests. 1 Pomeroy's Eq. Jur. §§ 113, 114, 115. One of the well-settled grounds for invoking such jurisdiction appears in the averments of difficulty and confusion in the records and accounts of the county in reference to the assessments.

The decree of the Circuit Court is reversed, accordingly, with direction to overrule the demurrer and proceed further consistently with this opinion.