GAGNON, APPELLANT, *v.* CITY OF BUTTE, RESPONDENT.

(No. 5,819.)

(Submitted January 8, 1926. Decided January 28, 1926.)

[243 Pac. 1085.]

*Cities and Towns — Special Improvement Bonds — Failure of City Treasurer to Collect Delinquent Assessment—Nonliability of City.*

Cities—Powers.
   1. A city may exercise only such authority as has been expressly delegated to it by statute or is necessarily implied therefrom.
Same—Special Improvement Bonds—Nonpayment—City not Liable, When.
   2. A holder of bonds issued for a special street improvement in 1910 under sections 3367–3429, Revised Codes of 1907, providing *inter alia* that the holder or owner of bonds issued under the Act should not have any claim against the city except from the special assessments made for the improvement, the bonds themselves providing that they were payable out of the particular improvement district fund, and not otherwise, cannot hold the city liable for their payment for the failure of its treasurer to make collections from delinquent property owners.
Same—Special Improvement Statute Authorizing Bonds, in Force at Time of Issuance Forms Part of Contract of Sale—City's Liability Unaffected by Subsequent Act.
   3. Under the rule that the law which subsists at the time a contract is entered into forms a part of the contract and measures the extent

of the obligation incurred, *held* that where a city incurred no primary liability for the payment of special improvements at the time they were made and bonds issued therefor (in 1907) under the then special improvement statute by which the bondholder was required to look to the assessments made for their payment, its liability in that respect was unaffected by any change made in the law by the enactment of Chapter 89, Laws of 1913, even though the bonds did not mature until 1920.

Same—Failure of City Treasurer to Collect Delinquent Assessments—City not Liable for Bonds.

4.  The holder of municipal special improvement bonds is chargeable with the nature and extent of a city's obligation with respect to the bonds, and where the city, through its treasurer, was simply acting as collector of the assessments as they fell due, it is the holder's duty to see that the treasurer performs his duty or to force him to do so by *mandamus;* and where he fails to do so he cannot thereafter hold the city liable for payment of the bonds.

---

[1]. Municipal Corporations, 28 Cyc., p. 260, n. 49.
[2, 3] Municipal Corporations, 28 Cyc., p. 1057, n. 37; p. 1644, n. 63;
p. 1646, n. 78, 80 New.
[4] Municipal Corporations, 28 Cyc., p. 1059, n. 52; p. 1644, n. 63.

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

ACTION by George L. Gagnon against the City of Butte. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. N. A. Rotering* and *Mr. A. C. McDaniel,* for Appellant, submitted a brief; *Mr. Rotering* argued the cause orally.

Where a city neglects to collect assessments which it is bound to collect for the benefit of the contractor and bondholder, it is personally liable therefor, even if there are contractual or statutory provisions against personal liability of the city. (*National Bank* v. *City of Portland,* 24 Or. 188, 41 Am. St. Rep. 854, 33 Pac. 532; *Jones* v. *City of Portland,* 35 Or. 512, 58 Pac. 657; *City of Atchison* v. *Friend,* 78 Kan. 30, 96 Pac. 348; *Dime Deposit & Discount Bank* v. *City of Scranton,* 208 Pa. 383, 57 Atl. 770; *O'Neill* v. *City of Portland,* 59 Or. 84, 113 Pac. 655; *Reilly* v. *City of Albany,* 112 N. Y. 30, 19 N. E. 508; *Ward* v. *City of Lincoln,* 87 Neb. 661, 32

L. R. A. (n. s.) 163, 128 N. W. 24; *Turner Imp. Co.* v. *City of Des Moines,* 155 Iowa, 592, 136 N. W. 656; *Dale* v. *City of Scranton,* 231 Pa. 604, 80 Atl. 1110; *Gable* v. *Altoona,* 200 Pa. 15, 49 Atl. 367; *O'Hara* v. *Scranton,* 205 Pa. 142, 54 Atl. 713; *Atchison* v. *Byrnes,* 22 Kan. 65; *Little* v. *City of Portland,* 26 Or. 235, 37 Pac. 911; *District of Columbia* v. *Lyon,* 161 U. S. 200, 40 L. Ed. 670, 16 Sup. Ct. Rep. 450 [see, also, Rose's U. S. Notes].)

It was claimed in the trial court by the city that the plaintiff has a remedy for the collection of the money due him on the bonds, by the foreclosure of liens on the delinquent property; that this right was given him by section 3425, Revised Codes of 1907, and was not taken away and could not be taken away by the Act of 1913, which repealed this section. The trial court seems to have adopted this view. Section 3425 was repealed before any of the bonds became due. The plaintiff could not sue on any of the bonds until 1920, because the bonds were not payable until ten years after their date; the city only reserved the right to pay at the end of five years after date.

If the plaintiff ever had such right, it was a useless and valueless right. It appears in the evidence that the delinquent property was sold by the city for delinquent general taxes. The evidence shows that when the special assessments went delinquent the general taxes also became delinquent. The lien for general taxes is superior to the lien of a special assessment, so that the latter lien could not be foreclosed against a purchaser under a sale for general taxes. (*City of Ballard* v. *Way,* 34 Wash. 116, 101 Am. St. Rep. 993, 74 Pac. 1067; *Dougherty* v. *Henarie,* 47 Cal. 9; *White* v. *Knowlton,* 84 Minn. 141, 86 N. W. 755; *White* v. *Thomas,* 91 Minn. 395, 98 N. W. 101; *Eddy* v. *Kimerer,* 61 Neb. 498, 85 N. W. 540; *Pennsylvania Co.* v. *Tacoma,* 36 Wash. 656, 79 Pac. 306; *City of Ballard* v. *Ross,* 38 Wash. 209, 80 Pac. 439; *Keene* v. *Seattle,*

31 Wash. 202, 71 Pac. 769; *Fleckenstein* v. *Baxter*, 114 Mo. 493, 21 S. W. 852.)

Since only the city could sell for general taxes, it should have also sold for the special improvement assessments. Nothing the plaintiff might have done could have helped him to obtain the money.

*Mr. John T. Andrew* and *Mr. F. E. Blodgett*, for Respondent, submitted a brief; *Mr. Blodgett* argued the cause orally.

Citing: *Wilson* v. *Aberdeen*, 19 Wash. 89, 52 Pac. 524; *Rhode Island Mtg. & T. Co.* v. *Spokane*, 19 Wash. 616, 53 Pac. 1104; *Northwestern Lumber Co.* v. *Aberdeen*, 20 Wash. 102, 54 Pac. 935; *State ex rel. American Freehold-Land Mtg. Co.* v. *Tanner*, 45 Wash. 348, 88 Pac. 321; *State ex rel. Security Sav. Soc.* v. *Moss*, 44 Wash. 91, 86 Pac. 1129; *Town of Windfall City* v. *First Nat. Bank of New Castle*, 172 Ind. 679, 87 N. E. 984; *State ex rel. National Bank of Tacoma* v. *City of Tacoma*, 97 Wash. 190, 166 Pac. 66, 68; *Town of Capital Heights* v. *Steiner*, 211 Ala. 640, 101 South. 451; *State ex rel. Security Sav. Soc.* v. *Moss*, 44 Wash. 91, 86 Pac. 1129; *Soule* v. *Town of Ocosta*, 49 Wash. 518, 95 Pac. 1083.

MR. JUSTICE GALEN delivered the opinion of the court.

In the year 1910 Joseph R. Silver, Jr., as contractor, constructed certain concrete sidewalks in accordance with plans and specifications within the confines of special improvement district No. 81 of the city of Butte. His work was approved, and he was paid therefor and accepted improvement district bonds, payable on or before ten years after January 1, 1910, with interest coupons attached. In this action the plaintiff, as the assignee of the contractor, seeks recovery from the city of Butte on certain of such improvement district bonds.

In the complaint it is alleged that special improvement district No. 81 was duly and regularly created; that the

special improvements to be provided consisted of the construction of concrete sidewalks in front of the real property embraced within the district; that a contract for the making of such improvements in accordance with the specifications was regularly awarded to Joseph R. Silver, Jr., and by him accepted; that the contractor duly performed the work to be done in accordance with his contract, which was accepted by the city, and thereupon delivery was made to him of special improvement bonds of the district in payment for the work; that the defendant duly levied an assessment against all the real property within the district for the redemption of the bonds in the year 1911 and subsequent years; that the bonds have not been paid; that the first of the special assessments levied against the property became due in 1911; that the unpaid installments of interest due upon the bonds provided for the payment of interest thereon, and that a large amount of interest became delinquent, and still remains unpaid; that the delinquent assessments are a lien against the real property against which they were levied; that the defendant has failed and neglected to collect the delinquent assessments against the real estate embraced within the district; and that the plaintiff cannot enforce payment thereof; and, further, that the defendant has failed, neglected, and refused to take up the bonds in full, or pay any interest accrued thereon since January 1, 1920. The bonds of the series involved herein are dated August 3, 1910, and, as shown by the plaintiff's complaint, recite: "The city of Butte, a municipal corporation, of the state of Montana, hereby promises to pay to J. A. Silver, Jr., or bearer, $100, lawful money of the United States, with interest thereon from and after the first day of January, 1910, at the rate of six (6%) per cent per annum, payable annually, principal and interest payable out of special improvement district No. 81 fund, provided for by Ordinances No. 809 and No. 931 of said city, and not otherwise, at the office of the city treasurer of said city. This bond is payable on or

before ten (10) years after the first day of January, 1910, and is subject to call by the city treasurer of said city whenever there shall be sufficient money in said fund to pay the same, together with all unpaid bonds of the same series of which this bond is one, which are prior to this bond in numerical order, over and above sufficient funds for the payment of interest on all unpaid bonds of said series.''

The bonds in suit are ten in number, aggregating the principal sum of $1,077.63, with interest thereon at the rate of six per cent per annum from January 1, 1920. In the prayer of plaintiff's complaint, he asks judgment against the city for the amount of the bonds sued upon, together with interest. Issue was joined by the defendant's answer containing certain admissions and denials of the allegations of plaintiff's complaint, and affirmatively alleging as reason for the nonpayment of the bonds that "there is not money within special improvement district No. 81 fund with which to pay the same." The cause was tried before the court without a jury. At the conclusion of the trial the court made its findings in favor of the defendant and against the plaintiff, pursuant to which judgment was regularly entered for the defendant. The appeal is from the judgment.

By testimony introduced upon the trial the plaintiff sustained the allegations of his complaint. It also appears therefrom, without dispute, that the city treasurer now holds to the credit of the improvement district fund the sum of $45.88 available for the payment of the sum due on the plaintiff's bonds.

Neither from the allegations of the complaint nor from the proof does it appear that the plaintiff has ever resorted to *mandamus* or other appropriate legal proceedings to compel the city authorities to make collection of the delinquent assessments.

The court found: "That all matters stated in plaintiff's complaint are true as matters of fact, save and except that

defendant failed to make a reasonable effort to collect the assessment and could have collected the same, and that plaintiff cannot enforce his lien; and the court further finds that the only reason the bonds were not paid is because there is no money in the fund to pay the same, and therefore the court concludes as a matter of law that the plaintiff is not entitled to the relief prayed for in the complaint; that the plaintiff is entitled to take nothing; and that the defendant is entitled to have judgment entered in its favor.''

The assignments of error require the determination of but one question, viz., the general liability of the city for the payment of these bonds.

It is apparent that special improvement district No. 81 was created pursuant to the provisions of Chapter III of Article X, sections 3367 to 3429, inclusive, of the Revised Codes of 1907, whereby it is provided, so far as pertinent to this inquiry, as follows:

"3387. *Assessments for Curbs, Gutters and Sidewalks.*—To defray the cost of curbing, guttering and constructing sidewalks, and keeping the same in repair, the city or town council shall assess the entire cost thereof to the property in front of which said improvement is made. The property occupying a street corner to be assessed for that part of said improvement which is within the street intersection."

"3399. *Levy of Tax.*—To defray the cost of making improvements in any special improvement district, the council, shall by resolution, levy and assess a tax upon all property in such district as provided in section 3396 (30) hereof. Such resolution shall contain a description of each lot or parcel of land, with the name of the owner, if known, and the amount of each partial payment, and the date when the same becomes delinquent."

"3402. *Delinquent Assessment.*—When one payment becomes delinquent, the whole tax shall become so, and the property shall be sold the same as other property sold for taxes."

"3411. *Tax, When Payable.*—The tax, as provided in the preceding sections of this article, must, unless otherwise distinctly specified, be paid within thirty days after its levy, to the city treasurer, who must give a receipt therefor, and in case of nonpayment the treasurer must proceed to collect the same in the same manner as delinquent taxes are collected on other property. If such tax is not paid within said sixty days a penalty of ten per cent shall be added thereto and collected as a part of the tax."

"3425. *Collection of Delinquent Assessments. Actions by Bondholder.*—If the owner of any parcel, lot or lots of land, liable for the payment of any bond issued under the provisions of this Act, shall fail to pay any assessment or assessments levied in accordance herewith, when due, the owner of any such unpaid bond or bonds may proceed in his own name to collect such assessments, and foreclose the lien thereof in any court of competent jurisdiction, and shall recover, in addition to the amount of such bonds and interest thereon, five per centum, together with the cost of such suit. Any number of holders of such bonds for any single improvement may join as plaintiffs, and any number of owners of property on which said delinquent assessments are a lien may be joined as defendants in such suit."

"3427. *Extent of Lien.*—Neither the holder nor owner of any bond issued under the authority of this Act shall have any claim therefor against the city by which the same is issued, except from the special assessments made for the improvement for which said bond was issued."

The several sections above set forth, excepting the last two, were enacted in 1897 as a part of House Bill No. 204, Laws of 1897, page 212. Sections 3425 and 3427 were adopted by Chapter 75 of the Laws of 1907.

The plaintiff predicates the city's liability to pay the bonds upon the failure to collect the assessments levied from the property owners for the benefit of the bondholders, and this,

notwithstanding the contractual and statutory provisions expressly requiring the holders of the bonds to look for payment from the special improvement district fund alone, relieving the city from any general liability for their payment.

It is argued that it was the city's duty to collect the assessments under adequate power conferred upon it, and, having failed so to do, it has become liable; and, further, that, if the plaintiff ever did have a right to enforce the lien of the bonds under the provisions of section 3425 of the Revised Codes of 1907, set forth above, it was taken away by Chapter 89 of the Laws of 1913; it being urged that, although some of the assessments became delinquent prior to the enactment of the last-mentioned statute, yet the plaintiff's right of action, if any existed, could not accrue until the year 1920, or ten years from the date of the bonds.

Section 27 of Chapter 89, Laws of 1913 (sec. 5251, Rev. Codes 1921), provides in part as follows: "In every city which shall provide by ordinance for the collection of its taxes for general, municipal and administrative purposes by its city treasurer, such city treasurer shall collect all special assessments and taxes levied and assessed in accordance with any of the provisions of this Act, in the same manner and at the same time as said taxes for general, municipal and administrative purposes are collected by him; and all of the provisions of section 3357 of the Revised Codes of Montana of 1907 [5215, Rev. Codes, 1921] shall apply to the collection of such special taxes and assessments in the same manner as such provisions apply to the collection of other city taxes. When one payment becomes delinquent all payments shall, at the option of the city council, by appropriate resolutions duly adopted, become delinquent, and the whole property shall be sold the same as other property is sold for taxes."

Section 5215, Revised Codes of 1921, referred to in the section last quoted, was enacted as a part of House Bill No. 213

of the Laws of 1897, and has since been carried forward without amendment. It provides that, where city treasurers are required to collect city taxes, they shall possess the same power as county treasurers to seize and sell property for delinquent taxes, give deeds to purchasers, and do everything that a county treasurer might do in the premises. The Act of 1913 above alluded to makes specific repeal of all of the sections of the Revised Codes of 1907 above set forth, including section 3425. The plaintiff insists that the later enactment is applicable, it being within the power of the state to adopt new remedies for the collection of the taxes even while they are in process of collection, and, consequently, that the city is required to make collection of the taxes as required by the statute, and, having failed to do so, is primarily liable. Many decisions of the courts of other states are cited by the able counsel for the plaintiff in an elaborate brief filed by them, but we cannot agree with their contention that the city may be held responsible for the payment of the bonds under the conditions stated. The plaintiff was not deprived of remedy by the later enactment.

It is settled in this state beyond question that a city may [1] exercise only such limited authority as has been expressly delegated to it by statute or is necessarily implied therefrom. (*State ex rel. City of Billings* v. *Billings Gas Co.*, 55 Mont. 102, 173 Pac. 799; *Shapard* v. *City of Missoula*, 49 Mont. 269, 141 Pac. 544; *Helena L. & Ry. Co.* v. *City of Helena*, 47 Mont. 18, 130 Pac. 446.)

There appears to be much conflict in the authorities, but, [2, 3] whatever may be the views expressed by other courts under like circumstances, we are of the opinion that the bondholder is bound by the law existing when the bonds were issued and as well by the terms of the contract as respects the method of payment. In language clear and unambiguous it is provided by the statute that "neither the holder nor

owner of any bond issued under the authority of this Act, *shall have any claim therefor against the city by which the same is issued"*; and pursuant thereto the bonds recite that they are payable "out of special improvement district No. 81 fund, * * * *and not otherwise* * * * whenever there shall be sufficient money in said fund to pay the same."

The enactment of the statute in 1913 in no manner affected the general liability of the city for the payment of the bonds, and the provisions thereof are without application in the decision of the question before us. The primary liability of the city in this proceeding is dependent alone upon the statute authorizing the bonds as it existed at the time they were issued and the language employed in the bonds. The Code provisions of 1907, above set forth, were in force when the bonds were authorized and issued, and the subsequent change in the law did not affect the city's general liability to pay the bonds (*Merriam* v. *People,* 160 Ill. 555, 43 N. E. 705), although the extent of the bondholders' remedies was reduced.

In 6 Ruling Case Law, 325, 326, the author says: "Conformable to the well established rule that the laws which subsist at the time and place of making a contract, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms, the obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribe." To the same effect, see, also, *City of Cincinnati* v. *Public Utilities Com.,* 98 Ohio St. 320, 3 A. L. R. 705, 121 N. E. 688.

"The levying and collection of assessments for local improvements is a purely statutory proceeding and in derogation of the common law. It is a general rule that, where a statute creates a new right and prescribes a remedy therefor, the remedy is exclusive. This principle applies to statutes which give the power to municipal or other public corporations to

75 Mont.—19

.  .  .  . .

levy assessments for local improvements and which provide for their collection. Hence it follows that no other liability can exist in respect to an assessment than that prescribed by the statute." (25 R. C. L. 172.)

"When the charter or statute authorizing the improvement, or an express stipulation in the contract, provides that the contractor shall be remunerated from the proceeds of an assessment on the property benefited and shall look only to the assessment as the source of payment, or when the city charter provides no other means to pay the contractor than the proceeds of the assessment as it is collected, there is no liability in the city to the contractor other than to make and collect the assessment and pay it over, unless the city fails in some duty it owes to the contractor connected with the levy and collection of the assessment. Upon the receipt of the assessment the city becomes liable to the contractor as for money received to his use." (2 Dillon on Municipal Corporations, 5th ed., sec. 827.)

A very valuable and comprehensive note reviewing many of the authorities with respect to the general liability of a city in instances arising under circumstances similar to the case under consideration will be found appended to the case of *Ward* v. *Lincoln*, 32 L. R. A. (n. s.) 163 (87 Neb. 661, 128 N. W. 24). Enlightening cases dealing with the question are *Banaz* v. *Smith*, 133 Cal. 102, 65 Pac. 309; *Davies* v. *Los Angeles*, 86 Cal. 37, 24 Pac. 771; *Rhode Island Mtg. Co.* v. *Spokane*, 19 Wash. 616, 53 Pac. 1104; *Northwestern Lumber Co.* v. *Aberdeen*, 20 Wash. 102, 54 Pac. 935; *German-American Sav. Bank* v. *Spokane*, 17 Wash. 315, 38 L. R. A. 259, 49 Pac. 542; *Thomas* v. *Olympia*, 12 Wash. 465, 41 Pac. 191 (holding that after an agreement that warrants should be paid from a special fund the contractor could not recover from the city for the negligence of its officers in failing to raise the fund); *Wilson* v. *City of Aberdeen*, 19 Wash 89, 52 Pac. 524;

*State ex rel. National Bank of Tacoma* v. *City of Tacoma,* 97 Wash. 190, 166 Pac. 68; *Hoyt* v. *Fass,* 64 Wis. 273, 25 N. W. 45; *Pontiac* v. *Talbot Paving Co.,* 96 Fed. 679, 37 C. C. A. 556; *White River Savings Bank* v. *City of Superior,* 148 Fed. 1, 78 C. C. A. 169.

Primarily, the city of Butte incurred no personal liability to the contractor who did the work. It was merely constituted an instrumentality of the law in initiating and carrying out the improvements and in collecting the money due upon assessments made by it against the property benefited in order to pay the obligations incurred in execution of the work. (*Town of Windfall City* v. *First Nat. Bank,* 172 Ind. 679, 87 N. E. 985, 89 N. E. 311.)

The plaintiff, because of his interest in having the obligations paid, was required to know that which was being done [4] or left undone in the premises by the city treasurer, and was afforded ample remedy under the law to compel the city treasurer to follow the mandates of the statute in the subjection of property embraced within the improvement district to the payment of the assessments levied. Consequent to the nature of the bonds and the law authorizing their issuance he had a special interest in seeing that the city treasurer made collection of all delinquent assessments within the improvement district or subjected the property benefited to sale where the owners thereof had failed to pay the tax, whereas the general taxpayers would, in most instances, be entirely oblivious of the failure of the city treasurer to perform his simple duty in this respect and of possible consequences. Being in possession of all the facts, and directly affected by the inaction of the city treasurer, the plaintiff could have instituted proceedings at any time to compel the city treasurer to perform his duty after the assessments became delinquent; whereas ordinarily the general taxpayers would be in entire ignorance of the conditions existing. The property embraced

within the special improvement district being liable for the
payment of the assessments levied, and the bondholder being
possessed of full knowledge of such fact by reason of the lan-
guage clearly expressed in the statute and by the terms of
the bond, there rested upon him a duty greater than upon
the general taxpayer to compel the city treasurer to act. The
plaintiff was chargeable with knowledge of the nature and
terms of the city's obligation with respect to the bonds, and
to now permit him to hold the general taxpayers responsible
because of the neglect of duty on the part of the city treas-
urer would be manifestly unjust. (*Wilson* v. *City of Aber-
deen, supra.*)

Reason in support of our conclusion is well stated by Mr.
Chief Justice Scott, speaking for the supreme court of Wash-
ington in *German-American Savings Bank* v. *Spokane, supra,*
which we take the liberty of adopting: "The question goes
much beyond the interests at stake here, and hardships are
bound to result however the principles are settled. On the
one hand, we have the rights of the general city taxpayer
to consider; he may have paid like assessments with reference
to his own property, and it is certainly a hardship to call
upon him to make good a failure on the part of some other
property holder to pay such an assessment, especially where
the threatened burden is so excessive, in view of the high rule
of property valuations prevailing in assessing for tax levies,
and the liberal public debt limits allowed. In some instances
it would come near the confiscation of his property. It is not
a satisfactory answer to such a man to say that he must be
bound by the negligence of men elected to act in a govern-
mental capacity over a town wherein he may be residing, for
it leaves him small chance of escape. * * * On the other
hand the warrant holders have parted with value for these
obligations, either in performing the work, where the warrants
are held by the original parties, or in the amount paid for
purchasing them, in the case of subsequent holders. As a

[75 Mont. 279.]

matter of justice they are entitled to payment, and we have their interests to consider. * * * After all that can be said and done, however, as a matter of right and law, where one of two parties must suffer, the loss should fall upon the one who has had the best opportunity to protect himself and is the most at fault. * * * While perhaps such general taxpayer might have compelled the city officers to act after the work was done, and the danger of loss to him imminent, the contractor or warrant holder had this same right, and the courts have all the time been open to him. By force of the contract such officers should be held to be more directly his agents or representatives than the agents of the general taxpayers for the purposes of the assessment, if they were such taxpayers' agents at all in the premises. By the contract the contractor has in effect adopted the machinery provided for raising his money through the acts of such officers." (See, also, *Broad* v. *City of Moscow*, 15 Idaho, 606, 99 Pac. 101.)

Since the plaintiff seeks to hold the city primarily liable—wholly independent of moneys held by the city treasurer to the credit of the special improvement district fund—he cannot in this action recover the sum of $45.88 shown to be now available for the payment of the bonds.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

Rehearing denied February 23, 1926.