150 P.2d 733

**MUNRO v. CITY OF ALBUQUERQUE**
(two cases).

Nos. 4718, 4722.

Supreme Court of New Mexico.
Dec. 16, 1943.

Rehearing Denied July 25, 1944.

308

Dailey & Rogers and Donald M. Bushnell, all of Albuquerque, for City of Albuquerque.

R. A. Prentice, of Tucumcari, and H. C. Buchly and W. A. Dunn, both of Roswell, E. R. Wright, H. A. Kiker and Manuel A. Sanchez, all of Santa Fe, Robert C. Foulston and John F. Eberhardt, both of Wichita, Kan., and Rodey, Dickason & Sloan, and Frank M. Mims, all of Albuquerque, amici curiæ.

Simms, Modrall & Seymour, of Albuquerque, for James Munro.

BICKLEY, Justice.

James Munro, hereinafter referred to as plaintiff, filed two complaints against the City of Albuquerque, hereinafter referred to as the City. In each, plaintiff sought a declaratory judgment regarding controversies between himself and the City as to the liability or lack of liability of the City growing out of certain paving bonds issued by it and owned by him.

The actions were consolidated in trial court and the appeals to this Court are likewise consolidated. The trial court rendered judgment against the City in one case and in its favor in the other. Effort has been made by the parties below and here to raise every question which might affect liability of the City. The plaintiff contends that he is entitled to have his bonds paid by the City because it was derelict in enforcing collection of certain paving assessments and alleges that but for such dereliction on the part of the City there would have been money in the paving fund to pay his bonds.

Amici curiæ aligned with the interests of the respective parties, have, as well as counsel for the parties, argued orally and filed briefs.

■ We say at the outset that our conclusion renders it unnecessary to make any declaration as to the correctness of the judgment of the lower court that the plaintiff's cause of action in appeal cause No. 4718 was barred by the statute of limitations. The City contends, correctly we think, that if No. 4718 were a separate appeal it would be permitted under our rule XVII, Sec. 2, to assign errors committed against it and thus raise the question whether notwithstanding any error we

might find to have been committed against the plaintiff on the statute of limitations conclusion of the trial court, the judgment in that cause should nevertheless be affirmed.

The causes were tried upon the pleadings and stipulations of facts, no witnesses having been offered by either party.

We assume that the assessments were validly made in accordance with the provisions of Ch. 152, Laws of 1919, which was amendatory of earlier acts and which, with some amendments not material to the issues here involved, were carried forward into the 1929 Comp. and also the 1941 Statutes Annotated, and that such assessments were payable in annual installments.

That act provided for the recordation of the liens of the assessments and that "such lien when delinquent shall have the effect of a mortgage and may be foreclosed in the method now provided by statute for the foreclosure of mortgages on real estate." It was also provided in that act that governing bodies of municipalities shall have power to fix a lien upon the property assessed "and declare such assessments to be a personal liability of the owner or owners of such abutting property."

No authority was granted to municipalities under these earlier acts to issue bonds payable out of the moneys collected from such assessments.

However, the lawyers devised a plan for doing so and ordinances were adopted by some of our cities pursuant to such plan.

In an attempt to supply the absence of express power or authority to provide for the issuance of such bonds these ordinances usually contained a preamble similar to those in the ordinances of the city appearing in the record before us and which we quote from Ordinance No. 136 which was passed, adopted, signed and approved the 26th day of December, 1922 which, as seen, was before Ch. 133, L.1923, authorizing the issuance of this kind of bonds was enacted as follows:

"An Ordinance providing for the issuance of paving bonds by the City of Albuquerque, New Mexico, to be exchanged for a like amount of assignable certificates which have been or will be issued to the contractor constructing street and alley improvements in said city.

"Whereas, the City of Albuquerque, in the County of Bernalillo and State of New Mexico, has heretofore taken proceedings for the paving and improving of certain streets and alleys in said City, all in accordance with the statutes providing thereof; and

"Whereas in response to the notice to contractors to submit bids for the furnishing of materials and the performance of work necessary for the construction of said improvements, a proposition was submitted to the city by the New Mexico Construction Company, under which the said company agreed to accept six per centum bonds in convenient denominations at par, on the prices named in their proposal for furnishing material and performing the

work. Provided, that the City would agree to make all collections of principal and interest on all the assignable certificates issued, and to pay such principal and interest to such bank as might be designated by said company on the day and date due; and

"Whereas, upon due and careful consideration of said proposition, the City Commission found and determined that it would be greatly to the profit and advantage of the city, and to the property owners to be assessed for said improvements, to accept the said proposition for the reasons that the said improvements could be constructed at a smaller cost to the property owners, that the said property owners would have a definite time and place for the payment of their assessments and the installments thereof, that such a plan would provide for one central collecting and disbursing agency, and that the city and the said property owners thereof would receive more for marketable bonds issued in convenient denominations than for assignable certificates issued in odd denominations; and

"Whereas, on the 10th of June, 1928, the City by resolution accepted the proposal of the said New Mexico Construction Company and on the 27th of June A. D., 1928, entered into a contract with said company for the construction of said improvements in compliance with their proposal and the considerations therein and herein mentioned.—

"Now, therefore, in consideration of all matters and things herein mentioned and heretofore done and performed.—

"Be It Ordained by the City Commission of the City of Albuquerque."

Although it is not apparent that after the passage of Ch. 133, L.1923, there was any longer a need therefor the same preamble appears in Ordinance No. 338 which is the one purporting to authorize the issuance of the bonds involved in appeal No. 4722. This ordinance was adopted and approved July 3, 1929.

The provisions of the two ordinances are substantially the same except that in the earlier ordinance Sections 4 and 5 of such earlier ordinance are as follows:

"Section 4. That if the owner of any parcel of land assessed for the said improvements shall be delinquent in the payment of any assessment, installment or interest due, it shall be the duty of the City Treasurer to notify such owner in writing that such delinquency exists, and that if the amount due is not paid within 30 days after the date of the said notice, *the matter will be referred to the City Attorney for collection and foreclosure.*

"Section 5. If the payment or payments as specified in the *next* preceding section is or are not paid within the stated time, *it shall be the duty of the City Treasurer to refer the matter to the city attorney, whose immediate duty it shall be to enforce and collect the amount due, together with all costs and penalties, by foreclosure, or*

*in any manner which is now or which may be provided by law."* (Emphasis supplied.)

Whereas corresponding sections in the 1929 ordinances are:

"Section 4. That if the owner of any parcel of land assessed for the said improvements shall be delinquent in the payment of any assessment, installment or interest due, it shall be the duty of the City Treasurer to notify such owner in writing that such delinquency exists, and that if the amount due is not paid within 30 days after the date of said notice, the delinquent property will be foreclosed in the manner now provided by statute or as may be hereafter provided for the foreclosure of mortgages on real estate.

"Section 5. If the payment or payments due as specified in the last preceding section is or are not paid within the stated time, the delinquent property shall be foreclosed in the manner now provided by statute or as may be hereafter provided for the foreclosure of mortgages on real estate."

Construed in connection with the provision of Sec. 2 of each ordinance to the effect that the city is empowered to receive, collect and enforce the payment of the assessments, "in the same manner and at the same time or times as the owner or owners of the assignable certificates issued to pay the cost of said improvements might receive, collect or enforce the said payments" it seems that the method selected in both ordinances whereby the delinquent property should be made to respond to the delinquent assessments was by foreclosure in the method provided for the foreclosure of mortgages on real estate.

Now Ch. 133, L.1923, which is the act enabling cities to issue the kind of bonds here in question says that in case the land assessed is delinquent in the payment of such assessment "the same shall be sold at the same time and in the same manner as the sale of property in such municipality for delinquent general taxes."

Did the city council of Albuquerque in enacting Ordinance No. 338 have a right to ignore this provision and promise to enforce collection of the assessments in some other manner?

We further observe that at no place in the ordinances or in the bonds is anything said about the bonds being negotiable.

It is true the city promised to pay the amount of the bonds "to the bearer hereof". It is true these are words indicating negotiability, but they are not conclusive. In 43 Am.Jur. "Public Securities and Obligations," Sec. 163, it is said: "In accordance with general principles applicable to obligations payable only out of a particular fund, it may be said to be a rule, supported by both an unbroken line of authority and sound reason, that bonds of political subdivisions are not negotiable within the rule of the law merchant and the Negotiable Instruments Act, even though made payable to bearer, if they are

payable solely out of a particular fund which may never be adequate to pay them. Thus, municipal improvement bonds payable only out of the assessment on the improvement district are not negotiable."

It might be claimed that if these bonds are negotiable it is because of what the statute says, and not by virtue of the ordinances or the recitals in the bonds, because they plainly say that the bonds are payable solely out of a special fund. Again, what we have quoted from the preamble to the ordinances indicates perhaps that if the ordinances constituted contracts such contracts were between the city and the contractor solely. It is only by drawing upon the statute (Ch. 133, L.1923) that any intention to contract with assignees of the contractor can be eked out.

Another thing which should be noticed is that under the earlier (1922) ordinance the duties with respect to the collection of assessments and foreclosure of delinquent property were imposed on city officers, namely the City Treasurer and the City Attorney. Would the city be liable for the negligent omissions of the officers to perform their duties, in the absence of a showing that the governing body of the city had ordered such officers to fail or refuse to act? See 1941 Comp. Sec. 14-1611.

-. We do not mean to suggest that the foregoing circumstances affect the problem here to be solved except to the extent that they support a view hereafter developed that after all, the rights and remedies of the bond holders are to be determined principally, if not entirely, by the provisions of Ch. 133, L.1923.

The question as to whether a bond holder who purchased a bond prior to the effective date of Ch. 133, L.1923, could successfully maintain that this enactment impaired an existing contract is not here involved. It is suggested by Ch. 133, L.1923, that the bond plan needed ratification and that therefore such plan was controlled by the provisions of the ratifying statute. As to this, we express no opinion.

The City failed to cause the delinquent property to be sold, thereby making the whole amount of the assessments due and payable and failed to enforce the collection of the assessments on many pieces of property in the paving districts, and thereby allowed the enforcement of the collection of said assessments to become barred by the statute of limitations. If the assessments had not been barred by the statute of limitations but had been enforced against the property, there would have been sufficient moneys collected in the paving funds to have paid plaintiff's bonds.

It appears that by reason of the failure to collect the paving assessments as they became due, there will be insufficient money collected from the remaining properties in the paving districts to pay the plaintiff's bonds.

The City continued to pay interest on plaintiff's bonds after many of the assessments on the property in the paving districts became delinquent. The plaintiff

had no actual knowledge that the city had failed to cause the various lots and parcels of land to be sold for any delinquent assessments or installments thereof or interest thereon.

Among the stipulations is the following: "That from the inception of the so-called paving districts involved in each suit, the treasurer of defendant City instituted and maintained an accounting system which was kept in said treasurer's office, and that at all times material hereto this accounting system showed the payments made on each piece of property on which a paving assessment had been levied, and that said records showed the amounts of payments so made, together with the dates thereof; and further, that said records at all times showed the balance owing on each assessment and the dates due, and was available for inspection by any interested party at any time."

It is also stipulated that when the bonds involved were issued the matter of such issuances was not submitted to the vote of qualified voters of the City as provided by Art. 9, Sec. 12 of the Constitution of New Mexico. The City contends that it is not liable under the facts shown in either cause for the following reasons:

"1. That the relationship between the City and the plaintiff so far as any rights or liabilities herein involved are concerned are purely contractual.

"2. The facts here shown do not reveal any breach of contract by the City, or if they do, any action otherwise lieing against the City therefor is prevented (1) by the provisions of Article 9 of Section 12 of the New Mexico Constitution, (2) by the Bateman Act, and that the same reasons likewise bar any action in equity for breach of trust.

"3. The statutory right of the plaintiff, as bondholder, to foreclose is exclusive, whether they have a right of action for breach of contract, for breach of trust, or in tort.

"4. If the plaintiff is held to have a cause of action in tort, recovery thereunder is prevented (1) by contributory negligence on his part in failing to exercise his statutory remedy to foreclose the liens, (2) by reason of the fact that the City in the matters here involved was acting in a governmental capacity."

Since our conclusion is that the City is correct in its proposition numbered "3", we find it unnecessary to discuss the other proposition except incidentally.

It may be well to say in the beginning that the words here italicized, used by us in Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310, 314, that "The city assumed no further responsibility * * * than to discharge *its trust agreement* to take the proper steps to protect the liens of the assessments, make collection thereof, and apply the proceeds to the payment of the so-called paving bonds." (Emphasis supplied), should be received and applied with caution. It may be assumed that the duty to apply the proceeds of the collected as-

sessments to the payment of the bonds is a trust relationship. But whether the relationship may be properly labeled a trust where nothing is involved except the duty to enforce payment of assessments is open to questions which we find it unnecessary to answer. We call attention to the fact that in State v. City of Carlsbad, 39 N.M. 342, 47 P.2d 865, 869, the question was as to the priority of rights between the different numbered bonds and as between principal and interest. And we there repeatedly emphasized the principle that the statute, ordinances and bond entered into the contract and were the sole measure of rights and liabilities. There was no discussion of the narrow question of the City's obligation to enforce or to collect the assessments; the only reference to "trusts" was in connection with disbursement of funds in the payment of earlier matured bonds. We said "The city treasurer is the trustee, *if this be a trust*." (Emphasis supplied.)

██ Municipalities are creatures of the laws of the state of which they are a part and their powers are derived solely therefrom. Purcell v. City of Carlsbad, 10 Cir., 126 F.2d 748, 37 Am.Jur., Municipal Corporations, Secs. 111, 112.

██ The ordinances in question could only be adopted pursuant to law and if they contain any promise to the bond holders in excess of the authority of the City to make such promises, they are to that extent mere nude pacts. But the most that we can gather from the ordinances is

that the City promised to enforce the collection of the assessments. This is a promise to perform the very services which the statute pursuant to which the ordinances were passed (or ratified) said the city should perform. The rule on this subject is stated in 6 R.C.L., Contracts, at Sec. 73: "Where a legal obligation exists a cumulative promise to perform it, unless upon a new consideration, is a nullity. A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound."

In 17 C.J.S., Contracts, § 110, it is said: "A promise to do what the promisor is already bound to do cannot be a consideration [and] if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration, except where the very existence of the duty is a subject of honest and reasonable dispute."

At § 111 of the same text it is said: "The act or promise of a party to perform a duty imposed by law will not constitute consideration for a promise given in return, but the rule is otherwise where such act is outside the scope of his duties."

So, we conclude that we must find the measure of the duties and responsibilities and liabilities, if any, of the City in the statute which enabled it to issue paving bonds involved in this action. We thus

come to an examination of the provisions of Ch. 133, Laws of 1923, 1929 Comp.Sec. 90-1701 and 1941 Comp.Sec. 14-3703, which incorporate a 1939 amendment which is immaterial to our consideration.

■ This is the statute which authorizes cities empowered to make assessments against abutting parcels of land to make street improvements and provide for the terms of payment of such assessments and the rate of interest upon deferred payments thereof to issue bonds of the nature here involved.

The statute limits the amount of such bond issues to the amount of the total assessments levied to pay the cost of the improvements and to secure which a claim of lien has been filed for record in the office of the county clerk. Then follows the language: "The governing body shall fix the terms and conditions of such bonds providing, however, such bonds shall be made payable out of the moneys collected from said assessments."

Statutes in some other states dealing in similar matters employ additional words such as "and not otherwise" so that the express limitation is made to read: "and such bonds shall be made payable out of moneys collected from said assessments and not otherwise."

If the bonds issued under our statute were payable *otherwise* they would be unconstitutional unless approved by the qualified electors of the city. See New Mexico Constitution, Art. 9, Sec. 12. So we hold that the words "not otherwise" should be supplied as expressing the legislative intent. That this was the interpretation of the City, acceptable to the bond holder, is manifest from the terms of the bonds which recite: "This bond is payable solely out of a special fund designated the Albuquerque Paving Fund, containing the receipts derived by the City from special assessments levied to pay for said improvements."

Again consulting the enabling statute we find it is made the duty of the clerk of the city after the completion of the work and approval by the city engineer to file in the office of the county clerk a claim of lien for the amount assessed against each lot and parcel of land so assessed. Then follows the portion of the act which has an important bearing on the rights and liabilities of the parties in the case at bar. It is declared: "In case any such lot or parcel of land so assessed is delinquent in the payment of such assessment or any installment of principal thereof or interest thereon the same shall be sold at the same time and in the same manner as the sale of property in such municipality for delinquent general taxes and at such sale said property shall be bought in by such municipality providing there is no other purchaser therefor."

The first thing to be noticed is that the statute does not speak of delinquency of the property owner. It says: "In case any such lot or parcel of land so assessed

is delinquent in the payment of such assessments," etc.

This suggests that the legislative intent is that the only liability for the payment of the bonds is a liability in rem and not in personam. See State v. Armstrong, 158 Okl. 290, 13 P.2d 198, 202, where the court said that if a judgment could be validly rendered against the city, then there would be accomplished indirectly that which is positively prohibited by law. The court quoted from the language of Judge McNiell in Broad v. City of Moscow, 15 Idaho 606, 99 P. 101, as follows: "The city or village is made the agent of the district to collect and apply the funds assessed to the discharge of the expense incurred in making such improvement. The obligation is an obligation of the property, not an obligation of the city or municipality. The contractor and bondholder is limited to the property for the purpose of realizing the amount due to such contractor and bondholder. The duties of the city in relation to the improvement and the fund to be collected from the property, and the duty of the officers of such city, clearly appear from the various provisions of the act, and if the city or the officers of the city, whose duty it is to act, neglect or fail to perform the duties imposed by this law, then the remedy of the contractor or bondholder is against such officers for the purpose of compelling them to act, but the indebtedness cannot be taken away from the property benefited and fixed against the property generally of the city."

The court expressed its disapproval of the opinion in Oklahoma City v. Orthwein, 9 Cir., 258 F. 190, and said that they preferred to follow the opinion of the United States Supreme Court in Moore v. City of Nampa, 276 U.S. 536, 48 S.Ct. 340, 72 L.Ed. 688 and the court went on to quote the language of Judge Gilbert in his opinion for the Circuit Court of Appeals, Ninth Circuit, in the Moore case reported in 18 F.2d 860, 862, as follows: "But the plaintiff seeks to charge the defendant with liability solely on account of alleged acts of negligence of its officers, and thus impose upon the general taxpayers of the city responsibility for the payment of local improvement bonds and defeat the protective purpose of the statute, whereby by express terms the general taxpayer is relieved of all liability for the cost of the local improvement; there being no contention that the money received here was diverted to a corporate purpose, or was used in such manner as to create an obligation on the part of the defendant to repay it."

The Oklahoma court, in the Armstrong case, supra, went on to say the taxpayers outside the improvement district had a right to assume that the governing body of the city would not create a liability against them for the benefit which was derived by the property in the improvement district.

At this point it may be beneficial to state some legislative history of the act which shows that it was carefully consid-

ered, and a determination to make the liability of the assessments and of the bonds in rem is manifest.

Ch. 133, L.1923, was House Bill 172. It passed the House and at page 431 of the Senate Journal the following appears: "House Bill 172 was ordered to remain on the calendar without prejudice · until the next legislative day, upon the request of Mr. Hedgecock."

At page 447 of the Senate Journal appears the following:

"House Bill No. 172, An Act Relating to Bonds Issued by Municipalities to Pay the Cost of Special Assessments, was read in full. Mr. Phillips moved the passage of the bill. The following floor amendment by Mr. Wright was adopted by the Senate:

"Line 1, page 2, printed bill, insert period before the word "and" and strike out the balance of the sentence.

"Mr. Wright moved the passage of House Bill No. 172, as amended."

The first paragraph, Sec. 1, of the bill as presented was as enacted except that it included the words at the end thereof: "'and declare such assessments to be a personal liability of the owner or owners of such abutting property." These were the words which were stricken out on the motion of Senator Wright.

It does not seem likely that the legislature would have so carefully guarded against personal liability of the owner or owners of the abutting property if it had been intended to subject not only the owners of abutting property but the owners of all real property within the city to the hazard of a levy of general taxes to pay judgments against the city secured on account of the city's failure or refusal to sell assessed property as provided by the statute.

The next succeeding clause is the vital one. It is said: "In case the governing body of such municipality shall fail or refuse to cause any lot or parcel of land to be sold for any delinquent assessment or installment thereof * * *, then the holder or holders of any bond or bonds secured by such assessment may foreclose the assessment lien on such delinquent property in the method now provided by statute for the foreclosure of mortgages (mortgaged) real estate."

This language contains a recognition of the fact that the governing body may fail or refuse to cause the delinquent land to be sold. The reason for recognition of this possibility is not clear. It has been suggested that the legislature may have thought that the governing body of municipalities might be inattentive and thus neglect to cause property to be sold when it became delinquent, or through favoritism or fear indulge a capricious failure to sell. This possible explanation does not reflect a very flattering estimate of the diligence, intelligence and disinterestedness of the governing bodies of municipalities. Another view is reflected in the opinion of the Supreme Court of Wyoming in Richardson v. City of Casper, 48 Wyo. 219, 45

P.2d 1, 3, where the court said: "It has been held that noncollection alone does not show any dereliction of duty; that in fact delay might under some circumstances be beneficial, rather than detrimental to the bondholder." (Citing authorities.)

■ It is suggested that if a bond holder could maintain an action against a city for failure to collect assessments, an interesting question might arise as to whether the neglect of the city arose out of indifference on the part of the city or whether the failure or refusal was due to a good faith exercise of judgment on the part of the city in the belief that delay might result in a benefit to the bond fund. We all know as a matter of common knowledge that in times of depression it is frequently difficult to sell real estate for what it is worth and sometimes perhaps for as much as the liens of assessments. We know that in times of depression legislatures have enacted moratorium statutes to suspend the operation of the laws authorizing the enforcement of liens against real estate. We know that our own legislature has even passed a moratorium statute suspending the right of the state to enforce liens on real estate to effect the collection of general taxes. We apprehend that the legislature in enacting the statute here involved may have sensed the fact that under some circumstances delay might be beneficial rather than detrimental to the bond holder. The legislature may have concluded that as to the question of when to sell and when not to sell property, which is the sole security for the bonds, the choice of policy should ultimately rest with the bond holder since his is the paramount interest. The legislature in constituting the governing body of a municipality an instrumentality for the collection and enforcement of assessment needs could have imposed an absolute duty upon such governing body. The legislature might have made this proceeding the sole duty of the governing body of a municipality. We assume that whatever rights and powers the governing bodies have in this respect are derived from the act of the legislature and that the bond holder would not have any right to foreclose the assessment liens without an enabling act of the legislature. The power conferred by the legislature upon the governing body of a municipality and upon the bond holder are of equal dignity and efficacy, the only difference being apparently that the bond holder could not properly proceed to exercise the remedy except upon a showing that the city had failed or refused to do so.

The Supreme Court of Pa., in First Catholic Slovak Union v. City of Scranton, 311 Pa. 500, 167 A. 34, held:

"Evidence held not to support court's finding of city's liability on street improvement bonds because nothing had been done to enforce payment of assessments.

"There was no evidence negativing agreement between bondholders and city that executions would have produced no funds or that such proceedings should await improved business conditions or decisiveness of other contingencies consid-

ered, nor showing that any bondholders requested city to proceed on liens or that they would not have suffered serious loss had city proceeded to sell property under existing business conditions."

■■ This suggests the thought that in the absence of requests by bondholders that the city proceed to cause the property to be sold, it would be difficult to say that the city had done nothing with regard to collection of the assessments. It might have considered the matter and concluded that it would be unwise on the then existing market. Of course, we do not mean to suggest that such a policy of delay could be indulged to the extent of permitting the statute of limitations to run, but the statute of limitations begins to run from the time of the first delinquency in payment of the assessment or installment thereon. So, if the city through a lack of attention, or through a mistaken view of what is the best course to pursue, fails or refuses to cause the property to be sold in the manner provided by statute in order to enforce the collection, the bond holder or bond holders have substantially four years, through persuasion, to induce the city to act, and if these methods are unavailing the bond holders may themselves proceed to enforce payments of the assessments. They are the ones primarily interested in enforcing collection and theirs is the ultimate decision.

Here we have a statute which creates a new right; viz., the right to collect assessments levied upon land to create improvements for the benefit of such lands. The law creates the governing body of a municipality as one instrumentality for the collection of assessments and reposes the power also in a bond holder whose bond is secured by such assessment to make collection thereof.

If both fail to exercise the power reposed in each and a mischief is caused, we have such a combination of joint omissions that it would be difficult to say which omission is the proximate cause of the harm to the bond holder. Is there not a sort of equilibrium between the two omissions which leaves the bond holder without an action for redress in damages against the instrumentality that was no more a contributor to the harm than himself? To allow the bond holder the right to procure a general judgment against the city in such instances would lack the element of mutuality of consequences. That is to say, if the bond holder may sit idly by and permit the statute of limitations to run and then recover a judgment against the city, the bond holder will have secured a better security, probably, than he theretofore had, but the city will have no opportunity to redress itself in case the bond holder also fails to avail himself of the remedy afforded him.

In the 3d and 4th Edition of Dillon on Municipal Corporations, Sec. 482, the author discusses the problem and says: "The right to a general judgment should, in our opinion, be limited, in any event, to cases where the corporation can afterwards re-

imburse itself by an assessment. For why should all be taxed for the failure of the council to do its duty in a case where the contractor has a plain remedy, by mandamus, to compel the council to make the necessary assessment and proceed in the collection thereof with the requisite diligence?"

The writer of a comment in 44 Harvard Law Review suggests that Mr. Dillon changed his views in the 5th Edition of his work at Sec. 827(2). We question the soundness of this appraisal. In any event it would not apply to the situation here because Mr. Dillon was speaking of circumstances where the city *alone* has the power to make and collect the assessments. (See bottom of page 1257.)

Reading the adjudicated cases we are impressed with the fact that many courts do not put a finger upon any exact theory but are influenced by what may seem to be fair and just to the judges. If this is permissible it is worthy of consideration that what the plaintiff, Munro, proposes would be an entirely one-sided procedure. Thus the bond holder starts out with assessments against lots and parcels of land as sole security for his bonds and through a combination of the failure of the city and his own failure to enforce the collection of the assessment, he comes out with a general judgment against the city which is enforceable by a levy of general taxes upon the taxpayers of the city and thereby he has been reimbursed and rewarded for his own lack of diligence and has sad-

dled onto the general taxpayers by indirection a burden which could not have been imposed directly without an approving vote of the taxpaying voters of the city because of the provisions of Art. 9, Sec. 12 of the Constitution. And the city or the taxpayers thereof will have no similar right to reimbursement. It is no answer to say that this consequence flows from the omission of the city authorities to perform a duty, because the bond holder has himself likewise failed to perform and thereby prevent or minimize the evil consequences. This lack of uniformity in the operation of the plaintiff's theory prompts its rejection.

Furthermore, the practical result of the view of the plaintiff is to wipe out the provision for enforcement by the bond holders. Thus, if their view should obtain, it is not only unnecessary that the bond holders bestir themselves but they have everything to lose by so doing. By proceeding as the law says they shall proceed they may collect only the proceeds of the foreclosure of the assessments, whereas if they hang back they have the chance of catching the city in negligence and thus gaining not the limited amount of the sole security intended but the entire resources of the city. This result would be a grotesque circumvention of the protective provisions in the constitution, statutes, ordinances and the bonds seemingly designed to shield the revenues of the city and the general taxpayers who produce them.

The rule is well settled that when a right is created which did not exist at com-

mon law, and for that new right a remedy is by the act prescribed, the whole matter of right and remedy is within the act and no part of either otherwise exists. See Wilson v. New Mexico Lumber & Timber Co., 42 N.M. 438, 439, 81 P.2d 61, 64, citing earlier decisions construing provisions of Workmen's Compensation Act requiring timely giving of notice of injuries, etc. We said: "1929 Comp., § 156-113, is a limitation upon the right as well as the remedy."

And see 1 C.J.S., Actions, § 6 stating: "Where a code or statute creates a new right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive."

In Couchman v. Prather, 162 Ind. 250, 70 N.E. 240, the court decided: "1. Burns' Rev.St.1901, § 285, provides that, when the death of one is caused by wrongful act, the personal representative of deceased may have an action, if deceased might have maintained an action, had he lived. Held, that an action could not be maintained under section 285 for the death of a person, owing to his intoxication by reason of liquor sold him by defendant in violation of law, even though deceased would have had a cause of action, had he lived, but the remedy is limited to that given by section 7288, providing that every one who shall sell intoxicating liquors in violation of law shall be liable to any person who shall sustain an injury to his person or property, or in means of support, on account of the use of such liquor."

The court said: "A statute giving a remedy which did not exist at common law not only speaks affirmatively, but it also speaks negatively. In such circumstances the maxim, 'expressio unius est exclusio alterius,' has a particular application. Sutherland Sta.Const. § 325. So far as a remedy by way of damages is concerned, the rule is that when a new right is conferred by statute, and an adequate provision for its enforcement is therein made, the statutory remedy is exclusive."

In Grant v. Slater Mill & Power Co., 14 R.I. 380, it was held that under a statute as to fire escapes a public remedy is given and also a remedy by injunction, available by individuals an action on the case after an injury based on noncompliance with the statute will not lie. The court said that it is a familiar rule that where a new right is created or a new duty imposed by statute there, if a remedy be given by the same statute for its violation or nonfulfillment, the remedy given is exclusive. The court proceeds: "Is this rule inapplicable to the case at bar? Or, to put the question in another form, is the case at bar an exception to the rule? If it be, it is because the remedy in equity, being purely preventive, is no remedy for an injury already incurred. The answer to that is, if the preventive remedy had been resorted to in season, no injury would have been incurred. We are not prepared to say that the answer is entirely satisfactory, nor are

we prepared to say that a statute might not be enacted, especially if it were enacted simply for the benefit of particular persons, under which the remedy in equity would be so clearly inadequate that it could not be presumed to have been intended to exclude the common law remedy by action on the case. It is evident, however, that the act here was designed primarily as a police regulation, and only incidentally, if at all, for the benefit of particular persons or classes of persons. It is when there is or may be a combination of both purposes that the difficulty arises. In such a case, says Judge Cooley, the question of civil liability for neglect of duty can only be determined by a careful consideration of the statute."

The court suggested the legislature had expressed itself on the subject of remedies, giving a limited remedy to individuals, and that therefore no other remedy in favor of them could be implied. The court went on to say: "Shall we say that still another remedy may be implied, or shall we hold to the maxim, expressium facit cessare tacitum"?

The court answered the question by holding to the maxim.

We think this maxim will aid us in our consideration of the case at bar. A celebrated English writer of the eighteenth century said that it may be freely translated as, "where a law giver sets down plainly his whole meaning, we are prevented from making him mean what we please ourselves." Has not the law giver plainly said that if the city fails or refuses to enforce the assessments, the bond holder may do so? The law giver provided an alternative to the city's failure or refusal, and it provided no other alternative and no exceptions to the rule laid down. We are prevented from finding any other alternative or exceptions.

Many of the cases cited by plaintiff were decided under statutes which are different from ours. In none of them did the statutes absolve the city from liability and point out the remedy which shall be pursued by the bond holders in case of failure or refusal of the city to enforce the collection of the assessments.

We have heretofore mentioned certain general principles and maxims which we think have a bearing on the problem. It may be well to cite a few instances of their application.

Among the cases denying relief such as is here demanded by the plaintiff is Richardson v. City of Casper, 48 Wyo. 219, 45 P.2d 1, 4, where the court had under consideration the claim that the city made no proper effort to collect assessments. A statute providing that if the city failed, neglected or refused to promptly collect any assessment due, the owner of the bonds might proceed to collect the assessments. In that case the court said:

"In some instances, a municipality has been held liable for negligence because the duty of collecting assessments was its primary duty, and though there was a contractual limitation of liability, a duty of

diligence on its part was implied. In the case at bar, there is not only a contractual limitation of liability, but also a statutory one. In such case no duty of diligence can be implied, at least in so far as the Legislature has given a direct means of relief on the part of the bondholders, and at least in so far as liability for tort is concerned. * * *

"In this state, the Legislature has spoken unequivocally and emphatically. Plaintiff is charged with knowledge thereof. We cannot give him any relief herein without holding that the Legislature has no right to establish a public policy to the contrary. We do not see how we can do that."

In the later case of Henning v. City of Casper, 50 Wyo. 1, 57 P.2d 1264, 1271, 62 P.2d 304, the same court reiterated the foregoing ruling and after review of contrary decisions said: "These authorities hold the city liable in case of neglect or refusal to collect the assessments. But that should, under our statute, be true only when the bondholder or contractor is not himself able to do so, as is true in the case at bar."

The court referred to the case of German-American Sav. Bank v. City of Spokane, 17 Wash. 315, 49 P. 542, 549, 38 L.R.A. 259, as having analyzed the reasons pro and con for holding or not holding the municipality liable in such cases and concluded that: "After all that can be said and done, * * * as a matter of right and law, where one of two parties must suffer, the loss should fall upon the one who has had the best opportunity to protect himself, and is the most at fault."

The Washington court concluded that the contractor or bondholder was the most at fault upon the following cogent reasoning: "It is apparent that if, by delay upon the part of the council to provide a special fund, the claim can become a general charge against the city, it would be directly to the interest of the warrant holder to have the proceedings delayed, in order that he might obtain the greater security, and avoid the possibility of loss through a failure of the property, or any of it, to bring the amount assessed against it, and such instances are not unheard of. It must also be borne in mind that he was a voluntary contractor, and was not put in the helpless condition of the general taxpayer outside of the district. While, perhaps, such general taxpayer might have compelled the city officers to act after the work was done, and the danger of loss to him imminent, the contractor or warrant holder had this same right, and the courts have all the time been open to him. By force of the contract, such officer should be held to be more directly his agents or representatives than the agents of the general taxpayers for the purposes of the assessment, if they were such taxpayers' agents at all in the premises."

The principle is tersely and admirably stated in Street's Foundations of Legal Liability, Vol. 1, p. 124, as follows:

"It goes without saying that where injury or damage is attributable to the negligence of the sufferer himself, he has no right of action against another who may have been concerned in the mishap. A man is required to use reasonable precautions in looking out for himself and for his own."

The Wyoming court in the Henning case seems to have approved this reasoning because it said: "We do not think that a bondholder should be permitted to sit idly by, without any effort to enforce, or bring into existence, the lien which he has or which the statute contemplates he should have, so that he may thereafter have recourse to a better security—the general funds of the city."

The case of Gagnon v. Butte, 75 Mont. 279, 243 P. 1085, 1088, 51 A.L.R. 966, is much like the case of Richardson v. City of Casper, supra. The Montana court in that case said:

"Primarily, the city of Butte incurred no personal liability to the contractor who did the work. It was merely constituted an instrumentality of the law in initiating and carrying out the improvements and in collecting the money due upon assessments made by it against the property benefited in order to pay the obligations incurred in execution of the work. Windfall City v. First Nat. Bank, 172 Ind. 679, 87 N.E. [984] 985, 89 N.E. 311.

"The plaintiff, because of his interest in having the obligations paid, was required to know that which was being done or left undone in the premises by the city treasurer, and was afforded ample remedy under the law to compel the city treasurer to follow the mandates of the statute in the subjection of property embraced within the improvement district to the payment of the assessments levied. Consequent to the nature of the bonds and the law authorizing their issuance he had a special interest in seeing that the city treasurer made collection of all delinquent assessments within the improvement district or subjected the property benefited to sale where the owners thereof had failed to pay the tax, whereas the general taxpayers would, in most instances, be entirely oblivious of the failure of the city treasurer to perform his simple duty in this respect and of possible consequences. Being in possession of all the facts, and directly affected by the inaction of the city treasurer, the plaintiff could have instituted proceedings at any time to compel the city treasurer to perform his duty after the assessments became delinquent; whereas ordinarily the general taxpayers would be in entire ignorance of the conditions existing."

To the same effect is New First National Bank v. City of Weiser, 30 Idaho 15, 166 P. 213, 216. The Idaho statute was practically identical with the Wyoming statute considered in the Richardson and Henning cases, supra, and the court there said:

"The remedy of the bondholder in case a property owner fails to make payment of

the taxes assessed against his property is not against the city nor the improvement district, nor against a person who has paid the sum due from him, but against the property of the delinquent.

"Under said act the plaintiff has a plain, speedy, and adequate remedy at law for the collection of any interest or principal due from any property owner who has failed to pay the assessments made by the city authorities, and, that being true, the writ of mandate will not issue. The bondholder must pursue the remedy provided by statute."

Powell v. City of Ada, 10 Cir., 61 F.2d 283, 288, is an interesting case. It points out that the statutes of Oklahoma give to the purchaser of bonds of this nature a lien on specific property but no right to proceed in his own name to enforce the lien, and pointed out the futility of attempting to review the many cases because they involve such a diversity of statutory provisions, and concluded under the facts of the case: "It is our conclusion, under these facts, that appellant cannot now maintain an action for damages against the city. Where the statute confers the power to re-assess, where there is no claim that that power has been lost, a holder of special improvement bonds should first proceed to compel the city officials to do their duty. The appellant's lien extends only to property in the improvement district; he does not have a lien on all the property in the city. The rule contended for by appellant would enable city officials, by mere neglect or a sim-ple refusal to proceed, to convert a special improvement bond into a general obligation of the city, and to compel property owners who have paid for paving abutting their property, to pay also for that abutting the property of others." See also State ex rel. Lynch v. District Court of McKinley County, 41 N M. 658, 73 P.2d 333, 113 A. L.R. 746.

In 38 A.L.R. 1271 and 51 A.L.R. 973 will be found elaborate annotations as to the liability of a municipality in consequence of its neglect, refusal or failure to collect from the property benefited. Decisions supplemental thereto are also available to the student.

Counsel for plaintiff referred to cases from the states of Wyoming, Idaho, Illinois, Alabama, Florida and others relied upon by the City as having been based on peculiar statutes of those states and that thereby these decisions are inapplicable here. Pursuing this argument plaintiff's counsel says:

"We believe that a typical statute is that of the State of Idaho (Sec. 49-2728, I.C.A.) which provides: 'The holder of any bond issued under the authority of this chapter shall have no claim therefor against the municipality by which the same is issued, in any event, *except for the collection of a special assessment made for the improvements for which said bond was issued*, but his remedy, in case of nonpayment, shall be confined to the enforcement of such assessments.'" (Emphasis ours.)

Counsel says that statutes of this sort "specifically absolve the city from liability" and quotes from Richardson v. City of Casper, supra. We think the appraisal of counsel is incorrect. The italics show that the city was not absolved from all liability. And see Cruzen v. Boise City, post. We think all that can be claimed for the statute quoted is that the municipality was absolved from paying the bonds in any other manner than from the proceeds of the assessments. In construing our statute we said in Munro v. City of Albuquerque, 43 N.M. 334, 93 P.2d 993, 997, substantially the same thing that was said in Richardson v. City of Casper, supra. We said: "We have said that 'the assessments are the bondholders' only resource' for payment. State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865, 868. We said further in that case that there was no debt to be secured and that 'the city's only obligation is to handle this fund according to the contract,' and that all parties are chargeable with notice of the statutes and ordinances governing."

This did not mean that a city might not be liable for damages under some circumstances for a negligent failure to perform a statutory duty it has assumed, where no remedy to the bondholder had been specifically supplied.

In Cruzen v. Boise City, 1937, 58 Idaho 406, 74 P.2d 1037, 1038, the court had the statute cited by plaintiff under consideration. In stating the contentions of the parties the court said: "In other words, respondents recognize that in so far as the initial security is concerned, no claim could be made against the city, only against the property in the district, and this is correct."

The court nevertheless proceeded to hold the city liable for the defalcation of its officers who had collected and embezzled the proceeds of the assessments.

It appears to us that the present problem should be worked out more on the line of actions or remedy than on the basis of substantive law or what we might consider to be the controlling equities. The right is to have the assessments enforced. Yet the assertion of such right is controlled exclusively by the act which created the right and can be asserted alternatively by the city or bondholders. See Silvia v. Scotten, 2 W.W.Harr., Del., 295, 122 A. 513.

The statute is notice to the bondholder of his rights and the limitations thereon. There can be no doubt that the bondholder has a *right* to himself enforce the collection of assessments or any installment thereof in case the city fails or refuses to cause the property to be sold in the manner provided by statute to collect the assessments.

If the bondholder has a potential cause of action which accrues upon the failure or refusal of the city to act, the obligation is necessarily imposed upon him of being sufficiently diligent to ascertain when the cause of action accrued. He cannot sit idly by until his cause of action is lost and then call upon the city and the general tax-

payer to pay his loss, if any, which is chargeable to his own neglect. The statute having provided the bondholder with a remedy under certain circumstances puts him on inquiry as to whether such circumstances have arisen. See Johnson v. Ryan, 43 N.M. 127, 86 P.2d 1040 (Syl. 6). As we have seen, the court in Gagnon v. City of Butte, supra, said it was the duty of the bondholder to keep informed of what was being done or left undone in the premises by the city, and in Purcell v. City of Carlsbad, 10 Cir., 126 F.2d 748, 751, the court said that it was unable to find any express duty imposed upon the City of Carlsbad to file the assessment liens with the county clerk as authorized by the statute. The court went on to say: "But if there was, the law imposes a corresponding duty on the certificate holder to compel the city to perform its statutory duty as a requisite to the maintenance of a suit for damages. Conceding, without deciding, that the City of Carlsbad was authorized by Section 82-303 to foreclose the liens against the delinquent assessments, the same right and duty was imposed upon the certificate holder and it was his duty to timely act under the provisions of the statute, and to either mandamus the city to perform its contractual or statutory duty, or to institute foreclosure proceedings in his own name."

The bondholder was bound to take notice of the city and other records pertinent to the circumstances of whether assessments were delinquent and whether the city had failed or refused to take steps to enforce collection by causing the property to be sold. The bondholder will not be permitted to say: "I will pay no attention to my own right to foreclose delinquent property which is security for my bond. So long as interest is paid I will take no steps to see that the security of my bond is not jeopardized. I shall neither ask the city to proceed nor act to coerce it by legal proceedings to do so. If I keep still long enough the city may fail or refuse to move on the assessment until it is too late for either of us to do so. Then I will look to the city and its taxpayers to repair the harm done me."

While the failure of the city to pay interest may afford notice to the bondholder that something is wrong, and be sufficient to put the bondholder upon inquiry, this is not the only means by which the bondholder is chargeable with notice. Nor is the fact that the city continued to pay interest on plaintiff's bonds until after the statute of limitation had run against the collection of assessments a controlling factor as showing lack of notice. Under some circumstances it is permissible for the city to continue to pay interest even though the bond fund might not be sufficient to eventually pay both principal and interest. We think the city's contention that its obligation, if any, being to enforce the assessments which are many in number, it necessarily follows that the failure in respect to each assessment is a separate cause of action, is sound. So the harm to the bond holder occurs when any assessment is delinquent and it

is his duty to take steps to protect himself if the city fails or refuses to cause the property to be sold.

The risk that the city will not act to enforce the collection of the assessments is a hazard the bondholder takes in buying a bond. This may not be fair and just to the bond holder, and it might appear to many not to be. But it is the result which the language of the statute clearly indicates as the legislative intent, and we have no choice but to observe it. The legislature has tried to minimize the bondholder's risk by placing in his hands a plain, speedy and adequate remedy.

Much sympathy is sought to be evoked for the bondholder. It is urged upon us that when the bonds were issued it must necessarily have been within the contemplation of all the parties that the bondholders would be scattered to the four corners of the earth and would be entitled to rely upon the city's promise to perform its duty and would not be under obligation to constantly check up on the city. This claim will bear some examination. As we have seen, the contract was between the city and the contractor, the New Mexico Construction Company, who took the bonds in exchange for constructing the improvement. If it seemed to the individual bondholder who bought his bond from the contractor too arduous a task to keep informed as to what was being done or left undone by the city treasurer and other city officials with respect to enforcing the collection of the assessments, good business judgment might have indicated that he decline to take the risk. Also, it is suggested that the bond buyer would not be imposing a too unreasonable requirement upon the seller the obligation of acting as investigator and informant as to what the city was doing or leaving undone in the premises.

The judgment in appeal cause No. 4722 is reversed and the cause remanded.

The judgment in appeal cause No. 4718 is affirmed for the reasons herein stated, and not for the reasons given by the district court, and the cause is remanded.

It is so ordered.

MABRY, J., and LUIS E. ARMIJO, District Judge, concur.

SADLER, Chief Justice (dissenting).

The law as declared in the prevailing opinion disposing of appeal No. 4722 strikes a blow at municipal credit in New Mexico so deadly that its recovery therefrom will not be witnessed within half a century. At the same time it operates to bring about a complete destruction of the investments of hundreds, if not more, of our people from all walks of life scattered throughout the nation—in some instances their life savings —made on the faith of an admittedly unfulfilled promise on the part of certain municipalities over the state. Nevertheless, contemplation of a result so harsh and so unjust cannot properly control disposition of the appeal before us, if the conclusion reached be inescapable. The majority feel

such is the case here. I entertain an abiding conviction that the weight of reason, logic and well-considered precedent, including unreversed decisions of this court, support a conclusion directly contrary to the one announced by the majority. This, I shall endeavor to demonstrate.

In its early stages the prevailing opinion seeks support for the conclusion later to be announced in a failure to find in the enabling act, the paving statute, authority for imposing general liability on the city. Failing to find such authority, the conclusion arguendo is that it does not exist. Of course, no such authority is to be found in the statute. It is contrary to the whole plan and philosophy of special improvement assessments that the general credit of the city shall be pledged for the retirement of special improvement bonds. Any effort so to do would violate constitutional inhibitions. City of Santa Fe v. First National Bank, 41 N.M. 130, 65 P.2d 857; Henning v. Town of Hot Springs, 44 N.M. 321, 102 P.2d 25.

The fallacy of this argument in support of the opinion lies in the fact that liability of the kind here sought to be enforced, viz., for breach of duty as trustee, arises not from *within* but *outside* the statute. And, by overwhelming authority, including some decisions of our own, such a liability is not within statutory or constitutional limitations touching the creation and amount of municipal indebtedness. Barker v. State ex rel. Napoleon, 39 N.M. 434, 49 P.2d 246; State ex rel. Martin v. Harris, 45 N.M. 335, 115 P.2d 80; In re Atchison T. & S. F. R. Co.'s Taxes, 41 N.M. 9, 63 P.2d 345; 38 Am.Jur. 138, 139; 38 A.L.R. 1277.

Another slender reed upon which rests, in part, the ultimate conclusion of nonliability announced in the prevailing opinion is disclosed in the effort to deduce from the language of the statute giving a bondholder the right to foreclose, if the city doesn't, a license in the city to do the very thing which the language relied upon condemns. Reference is to the following language of the statute, L.1923, c. 133, to-wit: "In case the governing body of such municipality shall fail or refuse to cause any lot or parcel of land to be sold for any delinquent assessment or installment thereof or interest thereon, then the holder or holders of any bond or bonds secured by such assessment may foreclose the assessment lien on such delinquent property in the method now provided by statute for the foreclosure of mortgages (mortgaged) real estate."

Obviously, this language recognizes the city's failure or refusal to foreclose as a default for theretofore the plain duty to enforce appears, to-wit: "In case any such lot or parcel of land so assessed is delinquent in the payment of such assessment or any installment of principal thereof or interest thereon the same shall be sold at the same time and in the same manner as the sale of property in such municipality for delinquent general taxes and at such sale said property shall be bought in by such municipality providing there is no other purchaser therefor."

It impresses one as a strained and unwarranted construction and the imputation to the legislature of an intent wholly foreign to its mind to hold that in opening its mouth to guard against default, it authorized and licensed default. Quite contrary to any such intent and as we ourselves have held, the whole theory of special improvement bonds contemplates prompt payment and collection of assessments, principal and interest, and punctual retirement of outstanding bonds as they mature. Any other theory would acknowledge insolvency of a paving district from the start and in effect operate as a fraud on investors. See State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865. To impute to the legislature an intent that would make a paving district insolvent from the time of its origin or, at the least, assure default in meeting principal and interest of its bonds at maturity, is truly unwarranted. This would be an inevitable result of what the opinion says arguendo was likely in the legislative mind.

The majority opinion also endeavors to draw some support for the conclusion announced from the history of an amendment to Laws 1923, c. 133 (House Bill 172) in the course of its passage through the legislature. The amendment, as pointed out in the prevailing opinion, was one striking out the language which would have made the assessments a personal liability of the owner of the property benefited. Obviously, the amendment is wholly without bearing on the question at issue in this case. It is public knowledge that this stricken language was removed to immunize the act against successful attack on constitutional grounds, having nothing to do with the question before us. 5 McQuillin on "Municipal Corporations", 2d Ed. 737, § 2238; Ivanhoe v. Enterprise, 29 Or. 245, 45 P. 771, 35 L.R.A. 58, with case note.

Having demonstrated, as I feel, the unsoundness and irrelevancy of the several auxiliary considerations, drawn upon by the prevailing opinion for its support, in part, we turn now to the legal proposition upon which it bases chief reliance for its correctness. The opinion sets forth four separate grounds of nonliability on the city's part as advanced by its counsel. After quoting them seriatim, the opinion states: "Since our conclusion is that the City is correct in its proposition numbered '3', we find it unnecessary to discuss the other proposition(s) except incidentally."

Proposition No. 3 as stated in the opinion reads: "3. The statutory right of the plaintiff, as bondholder, to foreclose is exclusive, whether they have a right of action for breach of contract, for breach of trust, or in tort."

The prevailing opinion then proceeds to ground itself upon the proposition that the legislature having created a new right and having afforded a remedy for the enforcement of that right, has by implication and under the doctrine "expressio unius est exclusio alterius", denied to the bondholder any recovery on the cause of action asserted for judgment against the city at large. In my opinion, this view, supported as it is

by some of the cases cited, gives an illegitimate and perverted application to the doctrine relied upon, and therein lies a fundamental weakness in the support provided for the majority opinion. It overlooks the controlling consideration mentioned at the outset of this dissent that recovery is not predicated on the statute—does not arise upon any authority for recovery to be found in the statute—but stems rather from a breach of trusteeship—a tort—and the remedy residing in the body of the law for the vindication of rights and the redress of wrongs.

A case recently decided in this court, Ritter v. Albuquerque Gas & Electric Co., 47 N.M. 329, 142 P.2d 919, will illustrate my point. No doctrine has been more thoroughly established by this court than that the Workmen's Compensation Act creates a new right and provides a remedy. The remedy has been held to be a part of the right. Taylor v. American Employers Insurance Co., 35 N.M. 544, 3 P.2d 76. Accordingly, we held in the Taylor case that the employer could not waive the time limit on filing claims nor create estoppel by actions or conduct that would toll the time. In the Ritter case, nevertheless, we upheld an agreement as not forbidden affording the employee a remedy outside that provided by the act and said he could enforce it or, rather, was not barred from claiming damages for its breach.

Let us suppose a case wherein a workman suffers injury—the loss of an arm or a leg. Through a fraudulent promise to compensate, the employer persuades him to delay filing a claim until it is too late—until it is barred by limitations—to bring the analogy closer to this case. Would it be said or held by this court that the workman could not recover damages from the employer in deceit for breach of the agreement to compensate? According to my understanding of the majority opinion, such a holding would be inevitable.

Let us suppose another case having to do with a city's duty as trustee under a paving bond issue. Suppose the money sufficient to retire the bond issue is collected by city officials and embezzled. Could it be successfully maintained that a judgment payable from the city's general revenues was unwarranted and not to be sustained? Obviously, it could not. And, yet, one may look in vain for authority in the statute for such a recovery.

Every case which this court has decided, and I have cited several of them hereinabove, holding that a judgment for tort against a municipal corporation is not within the interdiction of the Bateman Act nor proscribed by statutory debt limits for municipalities, argues against the soundness of the position announced in the majority opinion. Certainly, the Bateman Act is no less forceful or restrictive in its inhibition against contracting a debt in excess of current revenues—indeed, it is more so—than is the restriction, correctly implied, in the enabling statute here involved against payment of the bonds from any other source than proceeds of the special assessments.

The doctrine of "expressio unius est exclusio alterius", here invoked to support the holding announced, could be invoked with scarcely less logic and reason to sustain the Bateman Act in prohibiting payment of tort judgments. The Bateman Act assuredly has said that municipal indebtedness shall be paid from current revenues and not otherwise. We have held that debts in excess thereof are void. If the doctrine here relied on by the majority as defeating liability has ever been urged as proscribing payment of a tort judgment under the Bateman Act, it certainly has not been upheld, and the Harris, Napoleon and Atchison T. & S. F. Railway cases, cited supra, stand as the law of this State on the subject.

It is not my understanding that the prevailing opinion goes so far as to suggest overruling Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310; State ex rel. Ackerman v. City of Carlsbad, 39 N. M. 352, 47 P.2d 865; State ex rel. Lynch v. District Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746, holding the city to be a trustee under paving statutes and ordinances such as we have before us. The most the opinion does in this respect is to say we should accept with "caution" what is said in some of these cases on that subject. However, any admonition of caution seems quite amiss when considered in the light of the foregoing authorities and Gray v. City of Santa Fe, 10 Cir., 89 F.2d 406, and Gray v. City of Santa Fe, 10 Cir., 135 F.2d 374; City of New Orleans v. Warner, 175 U.S. 120, 20 S.Ct.

44, 44 L.Ed. 96; Scott on Trusts, § 863; 34 Amer.Jur. 86; 6 McQuillin on "Municipal Corporations" 126 and a large number of others which could be cited.

So, it will be taken as an accepted doctrine in this jurisdiction, which the majority seem displeased with but do not repudiate, that the city was acting as a trustee. So acting, one of its prime duties as trustee was to enforce collection of the paving certificates which formed the security behind the bonds. It is an admitted fact that the city defaulted in the performance of this duty as to large numbers of delinquent properties and continued its default until they became barred by limitations. It is also stipulated as a fact in this case: "that if the defendant, City of Albuquerque, had not allowed the assessments on the numerous properties hereinabove mentioned to be and become barred by the statute of limitations of the State of New Mexico, and had enforced the collection of said assessments against the said properties in accordance with the terms of the said ordinance and the said bond, there would have been sufficient money collected in the paving fund applicable to this series of bonds to have paid the principal of plaintiff's bond in full; * * *".

It is further stipulated that all interest coupons on the bond here involved were paid with due regularity, the first default occurring in the payment of the principal amount of the bond maturing on May 1, 1940.

It thus results that except as this plaintiff is to be charged with notice of the city's default by the condition of the city's paving accounts disclosing delinquent properties, he had no actual notice that delinquencies were taking place. The parties have so stipulated. Indeed, the receipt with regularity of interest on his bond would reassure him that delinquencies were not occurring and relieve him of constructive notice to the contrary if otherwise chargeable. City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402.

No doubt one reason for the many admitted defaults of the present defendant in commencing foreclosures, was the belief then generally entertained (so general and long continued as to amount to a practical construction by municipalities and the public of the limitations statutes), as pointed out in the dissenting opinion in Altman v. Kilburn, 45 N.M. 453, 116 P.2d 812, 136 A.L.R. 554, that there was no statute of limitations applicable to a city's right to foreclose paving certificates. This thought is echoed in the brief filed by the city's counsel in the case at bar, in the statement: "Of course, the decision on limitations as to the assessees was undoubtedly generally not expected." However, the Altman case decided the law to the contrary of what they say and I agree was "generally expected" and all causes of action more than four years old which previously had existed either in the city or in the bond holders were suddenly found to be barred. But for the

decision in Altman v. Kilburn, supra, this case would not be in court. The bond holders today find themselves the losers on both propositions. The municipalities, whose primary duty it was to foreclose, having defaulted, are relieved of the default, while using and enjoying paved streets paid for by the savings of others over the land, hundreds of whom will never receive back any portion of their investment.

Furthermore, when present paving and other municipal improvements financed by special assessments against the property benefited require replacement and reconstruction, the municipalities themselves will be the first to feel the harmful effect of today's holding. There is no known substitute, short of general municipal taxation or indebtedness, for civic improvements financed by special assessments against the property benefited. With the collapse of that plan for all practical purposes, for want of any feasible way of financing same, the towns and cities of New Mexico will face almost insurmountable difficulties in accomplishing future municipal improvements after today's decision. It would furnish no answer to say, in avoidance of such a disastrous result, that by omitting a privilege in the bond holders to foreclose following default of the city in that behalf, the legislature could make mandatory the city's duty in such behalf, nonperformance of which duty would give rise to recoverable damages. If the duty already is not mandatory,

as we think this opinion demonstrates, it is difficult to inject any language into the statute rendering more certain legislative intent that it was to be so considered.

Nevertheless, as already stated, if no other supportable conclusion than that announced by the majority can be reached, these unfortunate results, however regrettable, cannot be avoided. It has been demonstrated, in my opinion, that the prevailing opinion is bottomed upon a misapplication of the doctrine that where the legislature creates a new right and provides a remedy, those invoking the right are confined to the remedy supplied. With its main support gone, the correctness of the conclusion announced is exposed to serious challenge.

Certainly, the position of the city lacks the support of moral sanction. The city's counsel themselves practically admit as much. Seeking to mitigate the harshness of the position taken in the face of the many admitted defaults in the performance of its trust agreement, the following palliatory language is found in its brief, to-wit:

"It was as if the city said: we can't pledge ourself by contract to collect but we say we will establish an office, maintain records, receive and disburse the funds, and undertake, without contracting to do so, to enforce the collections, and if we fall down on the latter you collect yourself. The moral obligation of the city to enforce would ordinarily be strong. The simple truth is that the depression changed the sense of relative responsibilities. * * *

"Arrangements where the sanctions are in part moral, and knowingly not legal, are not at all uncommon in the ordinary dealings of mankind. Though they often lead to disappointment and are generally advised against by our profession, we all know that deals are often made in which one party says he will do things but refuses to assume legal responsibility for not doing so. * * *"

The trouble with this statement of counsel is that the city did assume a legal responsibility in the matter of these collections and the enforcement thereof and it should not be permitted to escape liability on the plea that it is only a moral responsibility. If a moral responsibility only, it is difficult to understand how mandamus may be employed to enforce its performance, a remedy which this court and other courts have held available to the bondholder. State ex rel. Lynch v. District Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746; Gray v. City of Santa Fe, 10 Cir., 89 F.2d 406; Id., 10 Cir., 135 F.2d 374. Only clear legal rights are enforceable by mandamus. Carson Reclamation District v. Vigil, 31 N.M. 402, 246 P. 907. We know of no instance, nor do counsel cite any, where the remedy was employed to enforce performance of a moral obligation. While the prevailing opinion does not in words lend approval

to counsel's appraisement of the city's responsibility as moral only, it does so in effect in its holding of nonliability on the city's part for a breach thereof.

Whenever a party is driven by the exigencies of his case to plead that he is morally obligated but not legally bound, it is time to look for some ground of legal liability and there is here no difficulty in finding it, well supported by abundant authority. City of New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L. Ed. 96; Gray v. City of Santa Fe, supra; Id., supra; City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402; Bessemer Inv. Co. v. City of Chester, 3 Cir., 113 F.2d 571; Stephens v. Hubbard, 234 Ky. 115, 27 S.W.2d 665; Henning v. City of Casper, 50 Wyo. 1, 57 P.2d 1264; 62 P.2d 304; 6 McQuillin on "Municipal Corporations", 2 Ed., 126, § 2428; 44 Harvard Law Review 610; and extensive annotation in 38 A.L.R. 1271, supplemented in 51 A.L.R. 937, where innumerable cases are discussed and briefly analyzed.

In an able opinion involving paving bonds issued by the City of Sante Fe, presiding Judge Phillips of the United States Circuit Court of Appeals for this, the Tenth Circuit, laid down the rule to be deduced from the authorities as follows:

"Where no assessment has been made but the power to assess still remains, or where an invalid assessment has been made but the power to reassess exists, or where an assessment has not been collected when due but the assessment still subsists and may be collected, the remedy of the certificate holder or bondholder for the lack of diligence on the part of the City officials is mandamus to compel them to assess or reassess and enforce collection.

"On the other hand where the City is without power to levy a valid assessment or has levied an invalid assessment and is without power to reassess, or has by its neglect of duty, permitted a valid assessment to expire and become uncollectible, *the City is liable for breach of duty or contract to pay the debt evidenced by the certificate or bond.*" (Emphasis mine). Gray v. City of Santa Fe, 10 Cir., 89 F. 2d 406, 411.

Under this test the City of Albuquerque is liable to the plaintiff for permitting the statute of limitations to outlaw a suit to foreclose the liens furnishing the security for his bond.

In Henning v. City of Casper, supra [50 Wyo. 1, 57 P.2d 1268], dealing with a somewhat similar situation, the Supreme Court of Wyoming made the following pointed remarks, very pertinent to the situation before this court on the eve of handing down this historic decision in the municipal life of the State, to-wit: "If an individual would give money to another in return for a supposedly valid obligation in writing, and the written instrument should turn out to be invalid, no court would hesitate an instant in making recovery possible. Principles of justice and honesty fundamentally apply to individuals, munici-

palities, states, and Nation alike, and should be applied alike, unless constitutional or statutory provisions forbid. Municipalities, it is true, are creatures of the Legislature and have only such powers as are granted them, and cannot do the things prohibited by law, as we held in the first part of Tobin v. Town Council, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902. But courts ought not, and will not, according to the weight of authority, go too far in brushing aside principles of justice and honesty, and this fact was recognized by us in the second part of Tobin v. Town Council, supra. *To give cities to understand that if they can get some one to buy worthless bonds, the purchaser may go and find his money where he can, and that upon them or their officers rests no duty whatever, does not sound like a salutary rule.*" (Emphasis mine.)

In reaching the conclusion they do, the majority are forced into the vulnerable position of asserting that the powers of foreclosure conferred by the legislature upon the city and the bondholders are of equal dignity and efficacy. In their opinion, they say: "The legislature in constituting the governing body of a municipality an instrumentality for the collection and enforcement of assessment needs could have imposed an absolute duty upon such governing body. The legislature might have made this proceeding the sole duty of the governing body of a municipality. We assume that whatever rights and powers the governing bodies have in this respect are derived from the act of the legis-

lature and that the bond holder would not have any right to foreclose the assessment liens without an enabling act of the legislature. The power conferred by the legislature upon the governing body of a municipality and upon the bond holder are of equal dignity and efficacy, the only difference being apparently that the bond holder could not properly proceed to exercise the remedy except upon a showing that the city had failed or refused to do so."

An analysis of this brief excerpt from the prevailing opinion plainly discloses the several false premises upon which rests the ultimate conclusion of nonliability on the part of the city. (1) The legislature did impose upon the city an "absolute" duty of foreclosure, following delinquency; otherwise, its performance could not be enforced by mandamus, as we have held. (2) The legislature did make foreclosure the *sole* primary duty of the city, upon delinquency, the statutory privilege arising in the bondholder upon default in the performance thereof in no manner denying it character as such. (3) The duty (less aptly called "power" in the quotation above) of foreclosure in the city and the statutory privilege of foreclosure in the bondholder to cushion a city's default in the performance thereof are not of "equal dignity and efficacy", and in the very statement of the "only difference" between them as being "that the bond holder could not properly proceed to exercise the remedy except upon a showing that the city had failed or refused to do so", the majority prove con-

vincingly that they are not of equal dignity and efficacy.

How can it be fairly said that the statutory *right* of foreclosure in the bondholder is as high in rank, dignity or efficacy, as the mandatory *duty* of foreclosure imposed on the city, when the one never so much as comes into being until, through either mere negligent or deliberate inaction of the party charged with the *duty,* the breath of life is blown into the *right*? How can it be considered of equal efficacy when the city holds possession of all lien certificates whose foreclosure is sought and it is given express statutory authority to bid in the property as trustee for the benefit of all the bond holders? And, is it not ironic to speak of the bondholder's secondary statutory privilege arising upon nonperformance of the city's primary duty as being of equal efficacy, in the face of the known fact that the bondholders are scattered to the four corners of the nation and must act concertedly, if at all, only after long and extensive inter-communication, organization of bond holders' committees and the collection of funds to finance the litigation?

These are but a few pertinent questions to which the prevailing opinion supplies no answer. But there is still another whose correct answer conclusively establishes the fallacy of the majority assertion that the bondholder's *right* and the city's *duty* are of equal dignity and efficacy. If they are so, upon what legal theory may the bondholder by mandamus compel the city to perform an act which he may himself do as well and as effectively? Why would it not furnish a complete legal defense in mandamus for the respondent to answer: "Foreclose yourself—the duty of foreclosure residing in you is as great and its performance by you as efficacious as that imposed upon me. Proceed on your own account."

The prevailing opinion has not and cannot furnish a satisfactory answer to these queries. The very fact that mandamus will lie at the suit of the bondholder to compel the city to foreclose fastens the primary duty of foreclosure on the city. And once it is conceded that the primary duty rests on the city, its liability for a breach thereof is abundantly established.

Much is said in the prevailing opinion of a supposed unfair advantage possessed by the bondholder in standing by and permitting the statute of limitations to run and thereby gaining a security never contemplated by the statute—the general taxing power of the city. It all comes back to the question of where rests the primary duty of foreclosure. If it rests on the city, as has been demonstrated, then all the city need do is to perform in good faith its mandatory duty of foreclosure and the bond holder will never be in a position to stand by and watch limitations run on the right of foreclosure, if so disposed.

If, in the beginning, the city entertained the ideas now advanced that the duty on it is not absolute; that the right arising in the bond holder after its default is of equal rank and dignity with the duty imposed

on it, good faith on its part as a trustee would seem to have called upon it to notify the bond holders that it was repudiating the trust in order that they might protect themselves. Cf. City of New Orleans v. Warner, supra. Not only was no such notice given the plaintiff, a bond holder, but the city continued seasonably to pay him interest, which it had not collected, up to the very last installment, thus lulling him into a sense of false security, while permitting the statute of limitations to bar foreclosure on delinquent properties. I cannot approve either the reasoning or any authority that will absolve the wrongdoer from responsibility in such circumstances.

As to appeal No. 4718, affirmed by the majority, "not for the reasons given by the district court", but for the reasons stated in disposing of appeal No. 4722, my disagreement naturally persists. The majority hold the complaint filed below and before us upon review of the judgment in appeal No. 4718 fails to state a cause of action against the city. For all the reasons heretofore given, in my opinion, it does.

I dissent.

WM. J. BARKER, District Judge, concurs.

On Motion for Rehearing.

The above-entitled causes having heretofore been heard and submitted on motion for rehearing, and the Court being now sufficiently advised in the premises, Chief Justice SADLER, Mr. Justice MABRY, Mr. Justice BICKLEY, District Judge WILLIAM J. BARKER and District Judge LUIS E. ARMIJO sitting, it is ordered, adjudged and decreed that said motion for rehearing be and the same is hereby denied.

Chief Justice SADLER and District Judge WILLIAM J. BARKER dissenting from such action by written opinion on file herein.

SADLER, Chief Justice and BARKER, District Judge (dissenting).

Because to our minds, it follows as night the day that liability in damages results for breach of the very same duty whose performance may be compelled by mandamus (State ex rel. Lynch v. District Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746 and Gray v. City of Santa Fe, 10 Cir., 89 F.2d 406; Id., 135 F.2d 374), namely, the city's statutory and contractual duty to foreclose punctually delinquent paving assessments, more especially where the obligor is a trustee (Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310; State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P. 2d 865; State ex rel. Lynch v. District Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746), we favor a rehearing and disagree with the action of the majority in denying the motion therefor.